## LOUIS E. PITTS v. LOGAN COUNTY, OKLAHOMA TERRITORY.

CLERKS OF TERRITORIAL COURTS—*Fees*    Clerks of the district courts of the territory are required by the laws of the United States to account to the secretary of the treasury of the United States for all fees earned by him as such clerk, territorial as well as United States, and any act of the legislative assembly attempting to regulate the same is in violation of the laws of the United States and therefore void.

*Error from the District Court of Logan County.*

Louis E. Pitts, who is the duly appointed, qualified and acting clerk of the district court of the First judicial district of Oklahoma Territory, on the 6th day of April, 1895, presented to the board of county commissioners of Logan county, his itemized statement of costs taxed against Logan county from March 9, 1895 to March 31, 1895, amounting to $144.90.   On the 12th day of April. 1895, the board of county commissioners allowed on said account the sum of $17.   From the decision of the board of county commissioners, the plaintiff in error appealed to the district court of

Logan county. The following agreed statement of facts was submitted:

"I. This is an appeal taken from an order of the board of county commissioners of the county of Logan and Territory of Oklahoma. entered on the 8th day of April, 1895, by the said board, wherein the claim of Louis E. Pitts for one hundred and forty-four dollars and sixty-nine cents, ($144.69), was allowed in the sum of seventeen dollars, ($17), and disallowed in all other sums.

" II. The plaintiff, Louis E. Pitts, is the duly qualified and acting clerk of the district court of the First judicial district, and of the district court of the county of Logan and territory of Oklahoma. That on the 6th day of April, 1895, he filed with the county clerk in the county of Logan and Territory of Oklahoma, his statement of account for fees claimed to have been earned by him as clerk of the district court of Logan county and Territory of Oklahoma, in criminal cases, between the 9th day of March, 1895, and the 31st day of March, 1895, in suits where the Territory of Oklahoma prosecuted criminal cases in the district court of said county.

"III. That the fees claimed in said bill would be proper charges against said county, according to the territorial laws in force prior to the 8th day of March, 1895, and according to the territorial fee bill approved March 8, 1895, if it were not for the limitation in the said act. approved March 8, 1895, prohibiting the allowance of any sum in excess of seventy-five ($75) dollars per quarter to the clerk of the district court for criminal fees, and the decision of this case depends wholly and entirely upon the question of the validity of such limitation contained in said act.

"IV. That the board of county commissioners in acting upon the claim of the plaintiff in this case, allowed the plaintiff's claim upon the basis of the validity of said limitation of seventy-five ($75) dollars per quarter for fees, pro-rating the time covered by such fee bill at the rate of seventy-five dollars per quarter, and allowed the bill upon said basis, and rejected the remainder.

"The above and foregoing are the facts of the case

and are submitted to the court for decision as a matter of law."

On the 11th day of May, 1895, the court rendered the following judgment on said statement of facts:

"Now, on this 11th day of May, 1895, said cause came on to be heard in its regular order, the plaintiff appeared by Asp, Shartel & Cottingham, his attorneys, and the defendant appeared by Harris Huston, county attorney, and the parties having waived a jury in said cause, the trial of the same proceeded before the court without a jury, and thereupon the parties submitted said case to the court upon an agreed statement of facts; and the court, after hearing the arguments of counsel and being duly advised in the premises, finds the law of the case in favor of the defendant; and thereupon the plaintiff filed his motion for a new trial, and his motion for judgment in said cause on the agreed statement of facts herein, which said motion for judgment on said agreed statement of facts the court overruled; to which ruling the plaintiff duly excepted and excepts; and thereupon said cause came on to be heard upon the motion for a new trial; which motion is by the court overruled, to which ruling the plaintiff excepted and excepts."

The case was then appealed to this court.   Reversed.

*Asp, Shartel & Cottingham*, for plaintiff in error.

*A. H. Huston* and *R. B. Huston*, for defendant in error.

The opinion of the court was delivered by

Scott, J.:   The principal question for our consideration in this case is, whether the territorial legislature has any right to fix the compensation to be allowed to the clerks of the district courts in this territory, for their services.   In the discussion of the subject, we find at the very outset that the district courts of this territory are creatures of congress.   The justices of the supreme court are appointed by the president, and are *ex-officio* judges of the district courts of the districts to which they are assigned by the supreme court.   The

46

same instrument that gave life to these courts also provided that the judges of the supreme court should appoint the clerk of that court, and the judges of the district courts should appoint the clerks of said district courts. The language of the act is, "each district court shall appoint its clerk." After having created the office and appointed the clerk, the act further provides what fees the clerk shall receive for his services, which reads as follows:

\* \* \* "There shall be allowed to the attorney, marshal, clerks of the supreme and district courts, the same fees as are prescribed for similar services by such persons in ch. 16, title Judiciary, of the Revised Statutes of the United States." (Organic Act, §13 )

Section 823, ch. 16, title Judiciary, reads:

"The following and no other compensation shall be taxed and allowed to attorneys, solicitors and proctors in the courts of the United States, to district attorneys, clerks of the circuit and district courts, marshals, commissioners, witnesses, jurors, and printers in the several states and territories, except in cases otherwise expressly provided by law. But nothing herein shall be construed to prohibit attorneys, solicitors and proctors from charging to and receiving from their clients other than the government such compensation for their services, in addition to the taxable costs, as may be in accordance with general usage in their respective states, or may be agreed upon between the parties."

The act then provides a fee bill under which the clerks are to tax costs as follows: Section 828 reads:

"For issuing and entering every process, commission summons, capias, execution, warrant, attachment, or other writ, except a writ of venire, or a summons or subpœna for a witness, one dollar.

"For issuing a writ of summons or subpœna, twenty-five cents.

"For filing and entering every declaration, plea, or other paper, ten cents.

"For administering an oath of affirmation, except to a juror, ten cents.

"For taking an acknowledgment, twenty-five cents.

"For taking and certifying depositions to file, twenty cents for each folio of one hundred words.

"For a copy of such deposition furnished to a party on request, ten cents a folio.

"For entering any return, rule, order, continuance, judgment, decree or recognizance, or drawing any bond, or making any record, certificate, return, or report, for each folio, fifteen cents.

"For a copy of any entry or record, or of any paper on file, for each folio, ten cents.

"For making dockets and indexes, issuing venire, taxing costs, and all other services, on the trial or argument of a cause were issue is joined and testimony given, three dollars.

"For making dockets and indexes, taxing costs, and all other services, in a cause where issue is joined, but no testimony is given, two dollars.

"For making dockets and indexes, taking costs, and other services, in a cause which is dismissed or discontinued, or where judgment or decree is made or rendered without issue, one dollar.

"For making dockets, and taxing costs, in cases removed by writ of error or appeal, one dollar.

"For affixing the seal of the court to any instrument, when required, twenty cents.

"For every search for any particular mortgage, judgment or other lien, fifteen cents.

"For searching the records of the court for judgments, decrees, or other instruments constituting a general lien on real estate, and certifying the result of such search, fifteen cents for each person against whom such search is required to be made.

"For receiving, keeping, and paying out money, in pursuance of any statute or order of court, one per centum on the amount so received, kept and paid.

"For traveling from the office of the clerk, where he

is required to reside, to the place of holding any court required by law to be held, five cents a mile for going and five cents for returning, and five dollars a day for his attendance on the court while actually in session.

"All books in the offices of the clerks of the circuit and district courts, containing the docket or minute of the judgments or decrees thereof, shall, during office hours, be open to the inspection of any person desiring to examine the same, without any fees or charge therefor."

Section 833 reads:

"Every district attorney, clerk of a district court, clerk of a circuit court, and marshal, shall, on the first days of January and July, in each year, or within thirty days thereafter, make to the attorney general, in such form as he may prescribe, a written return for the half year ending on said days respectively, of all the fees and emoluments of his office, of every name and character, and of all the necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year. He shall state separately in such returns the fees and emoluments received or payable under the bankrupt act; and every marshal shall state separately therein the fees and emoluments received or payable for services rendered by himself personally, those received or payable for services rendered by each of his deputies, naming him, and the proportion of such fees and emoluments which, by the terms of his service, each deputy is to receive. Said returns shall be verified by the oath of the officer making them."

Section 839 reads:

"No clerk of a district court, or clerk of a circuit court, shall be allowed by the attorney general, except as provided in the next section, and in section eight hundred and forty-two, to retain of the fees and emoluments of his office, or, in case both of the said clerkships are held by the same person, of the fees and emoluments of the said offices, respectively, for his personal compensation, over and above his necessary office expenses, including necessary clerk hire, to be audited and allowed by the proper accounting officers

of the treasury, a sum exceeding three thousand, five hundred dollars a year for any such district clerk, or for any such circuit clerk, or exceeding that rate for any time less than a year."

Section 857 reads:

"The fees and compensations of the officers and persons hereinbefore mentioned, except those which are directed to be paid out of the treasury, shall be recovered in like manner as the fees of the officers of the states, respectively, for like services are recovered."

At the last session of the legislative assembly of Oklahoma Territory a law was passed in which the assembly not only prescribed a fee bill under which the clerk should tax cost, but in civil matters limited his fees to $500 in each county per year, and in territorial criminal cases limited his fees to $75 per quarter. Section 2, ch. 25, Session Laws of Oklahoma, 1895, reads:

"The clerks of the district court of the counties in this territory shall receive [as their compensation for the services required by law to be performed by the clerks of the district court the following named fees:  *  *  *  Provided, that the district clerk shall pay into the county treasury all civil fees received by him in excess of five hundred dollars per annum."

Section 3 of this act then provides that the clerk of the supreme court shall receive the same fees for like services as are allowed clerks of the district court.

Section 48 of said act provides:

*  *  *  "That the total amount of the fees paid by the county to any clerk of the district court, justice of the peace or constable, shall not exceed seventy-five dollars per quarter."

These are the various sections under which the clerk gets his power to tax costs. It is contended by plaintiff in error, that the United States Statutes and the Organic Act of this territory, containing various

provisions relative to the powers of the clerks, are the ones under which they are to tax their costs and no others. Counsel for defendant in error contends that the various acts of congress above quoted, only applied to the United States business, and do not apply to territorial or civil business of the territory. If these acts. of congress apply, then the territorial legislature had .no right to interfere with the clerk, and he is not required to tax his costs under said act.

Counsel for defendant in error contend that there are two cases which give us the law on this subject, *Marte v. Ogden City Ry. Co.*, 35 Pac. Rep. 501, and *United States v. McMillan*, 37 Pac. Rep. 263, both cases being decided by the supreme court of Utah. The Marte case is not a well considered opinion, and the reasoning of the opinion will not stand the test. The court cited no authority and seemed to have decided the case off hand. The McMillan case announces no new doctrine, but relies solely upon the Marte case.

The supreme court of Utah certainly did not investigate the subject at any considerable length, it seems, or an unbroken line of standard authority would have led to a different conclusion. The Organic Act of this territory is the same in substance as that enacted by congress for the several territories and the District of Columbia.

Hon. Caleb Cushing, attorney general of the United States, as early as 1854, in his opinion to the honorable secretary of the interior, held that the clerk of the criminal court of the District of Columbia was bound to account to the treasury of the United States for his fees as clerk of said court.

At the time this opinion was delivered, and for a long time afterward, the District of Columbia was in many ways comparable to this territory. In 1801 (2 Stat. at L. ch. 15, p. 103) congress created two counties in the District of Columbia. Alexandria county being

that portion of the district ceded by Virginia, and Washington county, that portion ceded by Maryland. In the same act the circuit court of said district was created and the laws of Virginia were put in force in Alexandria county, and the laws of Maryland in Washington county. Congress retained the right to legislate for the district, but the laws of the two states were put in force, the same as the laws of Nebraska were put in force, in this territory. The clerk of the circuit court was to be appointed by the judge of that court and was to receive the same fees as the clerk of the circuit court for the district of Maryland. That part of the act in which the circuit court is created reads as follows:

"That there shall be a court in said district, which shall be called the circuit court of the District of Columbia, and the said court and the judges thereof, shall have all the powers by law vested in the circuit courts and the judges of the circuit courts of the United States. Said court shall consist of one chief judge and two assistant judges, resident within said district, to hold their respective offices during good behavior; any two of whom shall constitute a quorum; and each of the said judges, shall, before he enters his office, take the oath or affirmation provided by law to be taken by the judges of the circuit courts of the United States; and said court shall have power to appoint a clerk of the court in each of said counties, who shall take the oath and give a bond with sureties in the manner directed for the clerks of the district courts in the act to establish the judiciary of the United States."

That part of the act applicable to clerks of the circuit court, reads as follows:

*    *    *    "And the said attorney, marshal and clerks, shall be entitled to receive for their respective services, the same fees, perquisites and emoluments, which are by law allowed respectively to the attorney, marshal and clerk of the United States, for the district of Maryland."

The clerk of the United States district court for the

state of Maryland received the same fees as the clerks of the supreme court of that state, with some additional fees expressly given by congress. (1 Stat. at L. ch. 19, p. 625.)

In 1838 (5 Stat. at L. ch. 182, p. 306) congress created a criminal court in the District of Columbia. The act creating the court reads as follows:

"That from and after the passage of this law, a court shall be established in the District of Columbia for the trial of all crimes and offenses against the laws now in force in the said district, and such as may be hereafter enacted, to be composed of one judge, to be appointed by the president of the United States, by and with the consent of the senate, and to receive as compensation for his services an annual salary of two thousand dollars, which court shall be styled the criminal court of the District of Columbia."

The portion of the same act applying to the clerk reads:

"That the district attorney and marshal of the said district, and the clerks of the circuit court in the said district, for the counties of Washington and Alexandria, respectively, shall attend the said criminal court in said counties and perform all the duties now by law required of them respectively, in relation to the criminal business of the circuit court in the said counties, and shall be entitled to the same compensation they now receive for their attendance in the said circuit court in the said counties respectively."

Under this condition of affairs Attorney General Cushing was confronted with the question of whether the clerk of the criminal court was required to pay and account to the government for the fees received by him. The statute of 1842 was then in force. Section 167 of said act (5 Stat. at L., p. 483) reads:

"For defraying the expenses of the supreme, circuit and district courts of the United States, including the District of Columbia * * * three hundred and seventy-five thousand dollars: *Provided, however*, that every district attorney, clerk of a district court,

clerk of a circuit court, and marshal of the United States, shall, until otherwise directed by law, upon the first day of January and July in each year　＊　＊　＊ make to the secretary of the treasury　＊　＊　＊　a return in writing embracing all the fees and emoluments of their respective offices of every name and character ＊　＊　＊　and also embracing the necessary office expenses of such officers, together with the vouchers for the payment of the same,　＊　＊　＊　which return shall be in all cases verified by the oath of the officer making the same.　＊　＊　＊.　And no clerk of a district court, or clerk of a circuit court, shall be allowed by the secretary to retain of the fees and emoluments of his said office, or in case both of the said clerkships shall be held by the same person, of the said offices, for his own personal compensation, over and above the necessary expenses of his office, and necessary clerk hire included, also to be audited and allowed by the proper accounting officers of the treasury, a sum exceeding three thousand five hundred dollars per year for any such district clerk, or a sum exceeding twenty-five hundred dollars per year for any such circuit clerk.".

In 1853 (10 Stat. at L. p. 165), the following act was passed with reference to the report of fees of the clerks of the courts:

"Every district attorney, clerk of a district court, clerk of a circuit court, and marshal, shall, on the first days of January and July, in each year, or within thirty days thereafter, make to the attorney general, in such form as he may prescribe, a written return for the half year ending on said days respectively, of all the fees and emoluments of his office of every name and character, and of all the necessary expenses of his office. including necessary clerk hire, together with the vouchers for the payment of the same for such last half year.　He shall state separately in such returns the fees and emoluments received or payable under the bankrupt act.　＊　＊　＊.　Said returns shall be verified by the oath of the officer making them."

This is the law as existed at the time of the opinion of Attorney General Cushing.　After carefully review-

ing the subject, and so clearly laying down the correct construction of these several acts, there can be no mistake as to what fees are included in the act. Attorney General Cushing rendered three opinions on the questions of the clerk's fees in the District of Columbia. In his first opinion, reported in Opinions of Attorneys General, Vol. 6, p. 391, he says:

"Subsequently, questions arose, first, whether the courts of the District of Columbia, are, in any sort, comprehended within the proviso; that is to say, whether the clerk of the courts of the District of Columbia is under obligation to make any return of his fees and emoluments to the secretary of the treasury; and secondly, whether if obliged to make any return, he may not pretermit all amount of his fees and emoluments in the criminal court of the district."

Mr. Cushing then states that these questions had been before his predecessor, Mr. Crittenden, for his consideration, and he held after the question had been ably argued before him, that the clerks of the circuit courts of the District of Columbia were required to make reports of their fees under the act of 1842, *supra*, but held that he was not required to report the fees from the criminal court of said district under the act. From this holding Mr. Cushing ably dissents, and has been supported by Hon. Jeremiah Black in his holding. Mr. Cushing, on this branch of the subject, says:

"I do not conceive that the omission of the criminal court *eo nomine* is any more conclusive of the question than is the omission of the words 'District of Columbia.'"

Further, in the same opinion, (6 Opinions, p. 391,) he says:

"I think it is apparent from the whole of the provision, that congress intended the two things to go hand in hand, payment of expenses and accountability for, and limitation of, the fees and emoluments. Is the criminal court, because not specifically named in the act, to be considered as not included in the appro-

priation? If so, then the fees of the clerk are not included in the proviso of accountability. I cannot sever the two things; I think it is doing violence to the language of the act to separate them; I think it is contrary to the true legal intendment of the act, as well as to the obvious purpose and policy of congress.

"The truth is, that the district and criminal courts of the District of Columbia are each of them but exfoliations of the circuit court, created by the act of February 27, 1801, which provided generally for the political organization of the District, (2 Stat. at Large, p. 103.) Subsequently one of the judges of the circuit court was invested with the power of a district judge of the United States, (2 Stat. at Large, p. 124-126.) At a later period, namely, in 1838, the original cognizance of all crimes and offenses committed within said District was also branched off, and a separate judge appointed for the transaction of that business (5 Stat. at Large, 306.) In all these modifications of jurisdiction, the successive subdivisions of judiciary continues to be courts of the United States; and their common expenses continued to be comprehended by the phrase of appropriation, 'expenses of the supreme, circuit and district courts of the United States, including the District of Columbia.'

"Now, it would be a singular anomaly of legislation if the words 'circuit court,' or 'district court,' which take from the treasury of the United States the expenses of the criminal court of the District, do not also carry with them the corresponding rules of accountability and limitation; that a phrase of enactment, which pays the expenses of the circuit court with a condition, should require to be so construed as to pay the expenses of the criminal court, but, dropping the condition, I cannot see the reasonableness of such a contradictory interpretation of the same word, in the same act, and under all the circumstances, tending to establish a rule of logical *exegesis*.

In 1855 Mr. Cushing was again called upon to give his opinion on this subject, and the questions there presented were (7 Opinions of Attorneys General) as follows:

"Whether the clerk is under legal obligation to give credit for the fees earned by him?

"Whether, if he continues to give such credit, and fails to collect and account for the same, the department can lawfully retain of his fees, chargeable to the United States, a sum equal to the surplus found to be due to the government?

"And whether, fees due from private individuals thus remaining uncollected, and the sum total received thereby falling below the statute aggregate, the clerk may lawfully call on the United States to make up the deficiency?

"In order to answer all these questions satisfactorily it needs only to reflect that the clerk is a statute officer, with such rights and such obligations as the several pertinent acts of congress confer and impose.

"True, he is appointed by the court, not by the president or any of the administrative officers of the government. But that is immaterial. He is a public officer of the United States, appointed under statute in one of the four ways designated by the constitution, and exists only in virtue of the statutes and the constitution.

"It is true, also, that he receives compensation by fees, not by salary *eo nomine*, but he receives those fees officially, and only in right of his office, just in the same way that official fees are received by the consuls of the United States.

"It is further true, that some considerable part of his fees are for service to private suitors. But that is also immaterial. In the same way nearly all the fees of consuls are, on official service, rendered to private individuals. Nay, there are great departments of the public business in which it is in part or in whole, for service to individuals, that collections are made by the public officer, as in the postoffice and the patent office.

"In all these cases the theory is the same, namely, an instrumentality created by law, and for which the government makes itself responsible in its capacity of *parens patriae*, although much of that instrumentality is to be exerted in the direct benefit of private indi-

viduals, and is therefore maintained in part or in whole by fees charged to them, instead of being chargeable to the public revenue obtained by general taxation.

"Upon these premises my opinion is, that it is the duty of the clerks of the courts of the district to collect all fees in cash, just as it is the duty of the commissioner of patents to do, or of deputy postmasters in regard to the postage on letters; that if the clerk gives credit for any fees, he does that at his own risk, and if they be not paid, the loss devolves upon him alone; that if any deficiency thus arises, he cannot claim indemnity of the government; and that, on the contrary, he is obliged to make account of all such fees, and if by reason thereof a surplus fails to exist, then the clerk is chargeable with such deficiency at the treasury of the United States."

Mr. Cushing in 8 Opinions of Attorney General, p. 33, says:

"First, the act of 1842, requires the clerks to make return semi-annually, 'embracing all the fees and emoluments of their respective offices, of every name and character, distinguishing the fees and emoluments received and payable under the bankrupt act from those received or payable for any other service.' After that, is the provision fixing the maximum *repeate* in substance in the latter act. And then we have the following:

"And every such officer shall, with each such return, made by him, pay into the treasury of the United States, or deposit to the credit of the treasurer thereof, as he may be directed by the secretary of the treasury, any surplus of the fees and emoluments of his office, which his half yearly return so made as aforesaid shall show to exist over and above the compensation and allowances hereinbefore authorized to be retained and paid by him. And in every case where the return of any such officer shall show that a surplus may exist, the said secretary of the treasury shall cause such returns to be carefully examined, and the accounts of disbursements to be regularly credited by the proper officers of his department, and an account to be opened with such officers in proper books

to be provided for that purpose, and the allowances for personal compensation for each calendar year shall be made from the fees and emoluments of that year, and not otherwise.'

"Here we have express and explicit command to the clerk to make return of all fees payable (that is lawfully charged by him), as well as of those paid, fees receivable as well as those received. Reckoning of the responsibility of the clerk to the government is to be had on 'each such return so made by him' and this also by the unequivocal terms of the statute. 'And the allowances for personal compensation for each calendar year shall be made from the fees and emoluments of that year, and not otherwise'; which fees and emoluments had been previously defined to be fees and emoluments of every name and character received or receiveable.

"These provisions appear to me so plain, precise and clear as to preclude argument on the subject. * *

"The statute is general by its title covering the circuit and district courts of the United States, and it even contains enactments expressly applicable to the territories, to say nothing of the District of Columbia, and the only section of the act material to the present question, the third, is in comprehension of terms, in spirit and in received construction applicable to the clerk of the circuit and district courts of the District of Columbia. * * *

"In the face of the provisions of the acts of 1842 and 1853, it is, in my judgment, quite unreasonable to contend that any clerk of the courts of the United States is to give cr dit for the fees of his office *ad libitum*, to omit to collect and thus to throw away what is, in fact, public property, nay, more, that he is to be indemnified for the same out of the treasury of the United States.

"It is altogether immaterial whether the fees are large or small, and whether it is or not convenient to take the trouble to collect them in cash. The collections at the postoffices are each small in amount, and the postmaster may, if he pleases, open accounts with persons in the habit of receiving letters; but that is his affair. So, many of the fees to be collected and

accounted for by consuls are small in amount; but that does not change their duty nor their responsibility."

Hon. Jeremiah S. Black, attorney general of the United States, in 1858, in passing upon this question in 9 Opinions of Attorneys General, 136, used the following language:

"I concur with you in the opinion you express, that he is bound by law to account for the fees received by him in the criminal court as well as in the circuit court. The reasons you have given are sufficient, and they do not need to be repeated.

"I am also very clear in the opinion that he must account not merely for the fees actually received, but for those which he earned, and which he has neglected or otherwise failed to collect.

"The arguments by which Mr. Cushing supported his decision on this point, in the opinion dated August 12, 1856, are unanswerable."

Is not the case at bar clearer from a legal standpoint than those just quoted? In this case the clerk is clerk of the district court, and would, under the opinions of the attorneys general, be included in the appropriation and under § 833, requiring a report. In the Smith case, passed upon by the attorney general, the principal question was whether the clerk of the criminal court of that district was bound to report his fees. The clerk of the criminal court was not included in express terms in the acts requiring clerks to report fees, and the only way to make him report would be taking the intent of congress into consideration and construing the statute to mean "clerks of the criminal courts," as well as the other clerks. In those cases the clerk of the criminal court taxed the same fees as taxed by the clerks of the supreme court of Maryland, with some additions. It will also be noticed that the question as to the clerks of the circuit court of the

District of Columbia reporting their fees, that no question was raised. He transacted civil and criminal business, yet the United States held that he must report his civil business to the treasurer and account for all fees received by him of every name and character whatsoever, and the attorney general held that "these provisions appear to me so plain, precise and clear, as to preclude argument on the subject." If the clerk must account for these fees, no power on earth but the congress of the United States can alter or abridge them, and even if the clerk does not collect the fees, he is still bound for them, and the courts have held that he has the right to demand his fees in cash in advance, for this very reason. It would indeed be a strange condition of affairs to hold that the clerk should tax his fees under the territorial fee bill, and be restricted in the amount he could collect and keep, and then be compelled to account to the United States for these same fees according to the fee bill of the United States, ch. 16, title Judiciary, § 823.

The District of Columbia at the time these opinions were delivered was comparable to the Territory of Oklahoma, so far as this opinion is concerned. and it must be admitted that the construction placed upon the various acts by the attorney general of that time, would also be applicable and apply to the clerk of the district court of this territory at this time. More than forty years has elapsed since the first decision, and no one has questioned to any degree the soundness of these opinions. No attorney general since that time has been asked to overrule the opinions cited, and they are entitled to great weight in determining these questions. The continued construction by the heads of the departments, the supreme courts of the United States has many times held, to be of great weight, and in matters of doubt should be followed.

Attorney General Devens in January, 1879, issued a

circular letter to clerks, in which, referring to § 833, he says:

"This language embraces every possible fee or emolument accruing to you by reason of your official capacity, and does not allow the withholding of any. Whatever is done by you that you could not do if out of office has an official color and significance that brings it within the compass of the language of the statute."

In 120 U. S. 179, *United States v. Hill*, the supreme court, after quoting the above language of Attorney General Devens, says:

"This is undoubtedly a forcible and accurate statement of the meaning of the statute."

The supreme court says that it is a "forcible" statement, and, not only that, but an "accurate" one. No matter what fee the clerk receives, if he does it by virtue or color of his office, is within the meaning of the act, and he must report it to the United States. If this be true, it would be supererogation to contend that the territorial legislature could bring all this to naught, and, on the contrary, require the clerk to pay these fees into the county treasury of the county, instead of accounting for them to the United States. Suppose the legislature should have enacted that the office of clerk of the district court, so far as it pertained to territorial business, should be abolished, and the duties of his office performed by the county clerk without compensation; would it be contended for a moment that the law would be valid? Yet this act practically does this by attempting to take away the compensation provided by congress. The United States pays the salaries of the justices of the supreme court. It pays the clerk $5 per day for every day court is in session, and it does this, no matter whether the court sits as territorial or United States court, or transacts federal or territorial business. He is paid by the United States for going to and from courts.

His office is furnished him by the United States; the government pays for the deputy clerks, keeps a bailiff in attendance upon the court at all times, as well as a marshal. A fee bill is established by reference in the Organic Act. If it had been intended that the clerk should be subject to the will of the legislature, certainly congress, in this same connection, when enacting our Organic Law, would have provided a fee bill for the clerk in civil and territorial business, and that the clerk need not report to the United States any fees except what he earns from the United States business of said court. When, however, the Organic Act was passed, the United States supreme court in 1889 had already held that § 833 of the Revised Statutes of the United States included every fee that was earned by the clerk by virtue of his office; that whatever he did by virtue of his office, that he could not have done if out of office, had an official color and significance that brought it within the statute, and that this was the "undoubted" construction of this act, meaning thereby that there was no doubt. (*United States v. Hill, supra.*)

Some question has been raised by counsel for defendant in error as to the Averill case, 130 U. S. 335. That was a case appealed by the United States from the supreme court of Utah. The latter court held that the clerk was not restricted to $3,500 a year for his services, but could retain all the proceeds of his office. The supreme court, however, in reviewing the decision of the Utah court, reversed the holding of that court, and held that the clerk could only retain $3,500 per year. The supreme court of the United States, after reviewing the sections of the statutes hereinbefore referred to, says:

"They prescribe the fees to be allowed to, and retained by, clerks of district courts; 'and no other compensation' can, under § 1883, be allowed to be

retained by clerks of the district courts in Utah, for personal compensation than is by the provisions of ch. 16 of the title mentioned prescribed to be allowed to be retained by the clerks of the district courts named in § 839, for personal compensation."

The supreme court does not quibble with questions, and if the clerks were allowed to retain their fees in civil and territorial criminal matters, it would have said so. The court holds that the clerk cannot retain but $3,500 of the fees of his office. They do not say United States fees, but they must have known that he taxed, in his office, fees for territorial and civil work, as well as United States business. It was sufficient for them to say that he could not retain of his fees over $3,500 and necessary clerk hire. The court must have known that the clerk received other fees than United States fees, but in passing upon the question before them, it was immaterial from what source they came, if they were taxed by him as clerk of the district court.

Counsel for defendant in error in their brief say:

"If counsel's efforts, however, have cast a doubt upon the Utah cases, the case of the *United States v. Hill*, 120 U. S. 169, ought to be decisive of the principle for which we contend. Suit was brought in that case by the United States to recover from Hill, who was clerk of the United States district court for the district of Massachusetts, fees earned by him in examining naturalization papers, under the order of the court. The case went to the supreme court of the United States, and it was there held that only the fees prescribed in the federal fee bill need be accounted for by the clerk, that the other fees—naturalization fees, prescribed by the orders of court, need not be accounted for. And we submit that on the same principle fees prescribed by any other authority, whether it be by order of court or territorial enactment, are not within the purview of the federal fee bill, nor regulated thereby, but are controlled and regulated by the power that created them—the court or the territorial legislature."

Counsel have evidently mistaken the view of the Hill case. The doctrine as stated by counsel was not enunciated by the supreme court. That court was very clear in its opinion. The circuit court held that the clerk need not report these fees, and the supreme court of the United States, in affirming this decision, quotes from the language of the opinion of the honorable circuit judge as follows:

''It is for services rendered under these rules, and as a special officer of the court, and not as clerk, that these fees have been permitted. They were not duties pertaining to the office of clerk. They could as well have been performed by any other person designated by the court for the purpose, as by the district attorney, or a commissioner of the circuit court, or an attorney, or any suitable person not an officer of the court.''

It will be observed from the portion of the opinion just quoted that the clerk was not acting in his official capacity, but as any other individual. The court further says:

''These are duties which the court has the undoubted right to have performed by some other person than the presiding judge. In these cases the clerk acts rather as a person appointed to assist the court in exercising its functions, like a master or examiner in an equity cause, or an assessor in admiralty, or an auditor in a suit at law. It is the universal practice of all courts of large jurisdiction to appoint special officers, at the expense of the parties, to make inquiries, investigate details, examine papers, take accounts, make computations, and perform ministerial acts. Their reports, when returned into court and accepted, become part of the case, and form the basis of the orders and decrees of the court in the cause.''

It is further said, Mr. Justice Blatchford speaking for the court:

''They (the fees) did not accrue to the clerk by reason of his official capacity, but were for work which might as well have been done by him when out of office as when in.''

This is strong language, and if counsel for defendant in error wish to apply the rule to this case, it would be simply saying that the fees earned by the clerk for civil and territorial business, could be earned out of office as well as in, and by any private individual, as well as a duly authorized clerk. If this were true, any person could perform the services, whether clerk or not. It does not seem to us that the position is tenable. The least that can be said of these fees is, that they are earned by him as clerk of some court. If he earns them as clerk, he must account for them as such. From this conclusion we can see no escape.

As to the construction of departments being of weight in passing upon ambiguous statutes see: *United States v. Hill*, 120 U. S. 169; *United States v. Philbrick*, 120 U. S. 52; *United States v. Dickson*, 15 Pet. 141, 145; *United States v. Gilmore*, 8 Wall. 330; *United States v. Moore*, 95 U. S. 760, 783; *United States v. Pugh*, 99 U. S. 265, 269; *Smythe v. Fiske*, 23 Wall 374; 382; *Hahn v. United States*, 107 U. S. 402, 406; *Five Per Cent. Cases*, 110 U. S. 471, 485.

In the case of *Brown v. United States*, 113 U. S. § 568, it is held:

"This contemporaneous and uniform interpretation is entitled to weight in the construction of the law, and in a case of doubt ought to turn the scale."

In the case of the *United States v. Moore*, 95 U. S. 760, 763, it is said:

"The construction given to a statute by those charged with the duty of executing it * * * ought not to be overruled without cogent reasons. * * * The officers concerned are usually able men and masters of the subject. Not unfrequently they are draftsmen of the laws they are afterward called upon to interpret."

See also on this subject: *Edwards v. Darby*, 12 Wheat. 206; *Adkins v. Disintegrating Co.* 18 Wall. 272, 301; *United States v. State Bank of North Carolina*, 6 Pet. 29.

Taking this view of the question there can be no doubt that the territorial legislature has no right to interfere with the compensation of the clerks of the district courts. The clerk must account for all of his fees, and if so, congress is the only authority to fix the amount of such fees.

Suppose it is admitted that the clerk occupies two offices, and that in one of them he acts as United States district clerk, and is responsible to the United States for his actions as such clerk, and that in the other he acts as a territorial clerk, and is responsible to the territory for his actions as such clerk. This indeed would be an anomalous condition of affairs. The legislature has nowhere created the office of clerk of the court, has nowhere provided for the giving of a bond, and the only law which provides for a bond is § 795 of the Revised Statutes of the United States, which reads:

" The clerk of every court shall give bond, in a sum to be fixed, and with sureties to be approved by the court which appoints him, faithfully to discharge the duties of his office, and seasonably to record the decrees, judgments and determinations of the court of which he is clerk."    *    *    *

If he is simply acting as a clerk under this statute he is responsible to the United States; the bond is made to the United States, and it is the only one known to the law for the clerks of the district courts of this territory. Congress evidently did not intend to have a clerk of this court on the territorial side (if the construction contended for is correct) act without a bond and be responsible only individually. How could the territory avail itself of this bond if a default were made in the office of territorial clerk? Of course this may be said to have been a mistake on the part of congress, or the legislature, in not providing for a bond for the territorial clerk, but in construing this

act, it is of importance to see what the intent of congress was upon the subject. The congress of the United States is certainly capable of enacting clear and unambiguous laws relating to the territories, and especially Oklahoma, for it was the last territory organized, and the experience of congress before, and the various enactments, were open for inspection, and it was thought proper to follow the various enactments with reference to the territories organized before this one.

Again the question comes to us, is the clerk of the district court occupying two offices, or in other words, two clerkships, separate and distinct from each other? If he is, it must be by implication, as there is no express statute creating the two offices. In all of the acts of congress he is spoken of as one clerk; frequently the term "office" is used. He is clothed with many powers, the same as the judges of the district courts. He may act in many capacities, but in all of them as one clerk. There is no duality of clerkships. It has been settled by a long line of decisions by the supreme court of the United States that the courts of the territories are not United States courts within the meaning of the constitution. The question is so well settled that it is not necessary to discuss the proposition at any length.

In the case of *Bennett v. Porter,* 9 Howard, 242, the proposition is so clearly decided that it may be well for us to quote it:

"The distinction between the federal and state jurisdictions under the constitution of the United States, has no foundation in these territorial governments, and consequently no such distinction exists, either in respect to jurisdiction of their courts or the subjects submitted to their cognizance. They are legislative governments, and their courts legislative courts; congress, in the exercise of its powers in the organization and government of the territories, combining the pow-

ers of both the federal and state authorities.   There is but one system of government, or of laws, operating within their limits, as neither is subject to the constitutional provisions in respect to state and federal jurisdiction.

"They are not organized under the constitution nor subject to its complex distribution of the powers of government, as the organic law; but are the creations exclusively of the legislative department, and subject to its provisions and control.   Whether or not there are provisions in that instrument which extend to and act upon these territorial governments, it is not now material to examine.   We are speaking here of those provisions that refer particularly to the distinction between federal and state jurisdiction."

So it will be clearly seen that these courts are not United States courts within the meaning of the constitution, but simply created under the general powers of congress in the organization and government of the territories.   Congress created this court as one court, having general jurisdiction in all United States and territorial matters.   The clerk was created as the clerk of that court.   He is not the clerk of two courts or three courts or any other number but that one.   He is accountable only to the United States for his actions and the territory can have no jurisdiction over him whatever.

Taking this view of the question it must necessarily follow that the legislative assembly has no power to establish and regulate the fees and compensation of clerks of territorial courts established by the laws of congress, and the provisions of this character involved in this controversy are in conflict with the Organic Act and the statutes of the United States governing the fees of the clerks, and is therefore void, and in no sense a rightful subject of legislation.

The judgment of the lower court will be reversed.

By the court:   It is so ordered.

Dale, C. J., having presided in the trial of this cause in the court below, not sitting; Burford, J., dissenting; all the other Justices concurring.