## Bohart *et al.* v. Anderson.

No. 500.   Opinion Filed June 8, 1909.

(103 Pac. 742.)

1. **CLERKS OF COURTS—Fees—Supreme Court—Statutory Provisions.** The sections of the act of the Legislature of Oklahoma contained in chapter 15, p. 160, Laws 1897, relating to the fees of the clerk of the Supreme Court and the payment thereof, are void; following **Pitts v. Logan County,** 3 Okla., 719, 41 Pac, 584 and **United States v. MacMillan,** 165 U. S. 504, 17 Sup. Ct. 395, 41 L. Ed. 805.

2. **STATUTES—Construction—Giving Effect to Entire Instrument.** It is a proper rule of construction that the entire act or instrument is to be examined, with a view of arriving at the true intention of each part, and that effect is to be given, if possible, to the whole instrument and to every section and clause. Courts favor a construction which will render every word operative, rather than one which makes some words idle and nugatory.

3. **OFFICERS—"Fees" Distinguished from "Costs."** The terms "fees" and "costs" are often used interchangeably, as having the same application; but accurately speaking the term "fees" is applicable to the items chargeable by law between the officer and the party whom he serves, while the term "costs" has reference to the expenses of litigation as between litigants.

4. **CLERKS OF COURTS—Fees—Supreme Court.** Section 13 of the Organic Act (Wilson's Rev. & Ann. St. 1903, sec. 73) and chapter 16, title "Judiciary," sec. 833, of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 642), relating to the fees and compensation of the clerk of the Supreme Court of the territory of Oklahoma. are inconsistent with and repugnant to the schedule of the Constitution, as well as locally inapplicable; hence they were not extended to, nor did they remain in force in, the state.

5. **OFFICERS—Reasonable Compensation in Absence of Statute.** When the compensation of an officer is not fixed by law at the time he renders a service, but it clearly appears that it was the intention of the lawmakers that he should receive a reasonable compensation, to be fixed by law, until it is so fixed he is entitled to a reasonable compensation, to be determined by the proper tribunal.

6. **CLERKS OF COURTS—Fees—Supreme Court—Payment in Advance.** A party requiring the service of the clerk of the Supreme Court may lawfully be required to make payment therefor at the time the request for the service is made, and the clerk may lawfully decline to render the service until reasonable compensation is tendered therefor.

Kane, C. J., dissenting.

(Syllabus by the Court.)

In an action between J. A. Bohart and others and Margaret Anderson a controversy arose between Thomas J. O'Neill, counsel for plaintiffs in error, and W. H. L. Campbell, the clerk of the Supreme Court, as to whether the clerk was entitled to demand his fees for filing papers when offered and on refusal to pay the same decline to render the service. Finding for the clerk.

*Thomas J. O'Neill,* in *pro. per.*

*Devereux & Hildreth,* for respondent.

DUNN, J. This matter is a side issue to the above-entitled cause, arising on a controversy between Thomas J. O'Neill, Esq., counsel for plaintiffs in error, and W. H. L. Campbell, Esq., clerk of the Supreme Court, in reference to the payment of fees for the filing of the papers in the cause. When the same was tendered for filing, counsel for plaintiffs in error was called upon by the clerk to make an advanced deposit. On his declining to do so, this requirement was waived by the clerk, as is shown by the correspondence attached to the motion, and movant informed that, if he did not wish to make the same, it would be necessary to advance money sufficient to cover the fees as earned for filing the papers. Counsel declined to tender or make payment as requested, insisting that the service be first performed.

Our attention has been called to, and we know of, no statute providing for a bond solely for costs incurred in the Supreme

Court. The only place, so far as we have been able to ascertain where a litigant is protected in the money he may expend for fees of the clerk, or other costs, is under paragraph 4746 of Wilson's Revised and Annotated Statutes of 1903, where provision is made for a supersedeas bond. A purported bond of this character appears in the case, and counsel for plaintiffs in error urges this as an additional reason why he should not be called on to advance the fees of the clerk in cash, assuming that such bond would afford full protection to the clerk for any services rendered and fees earned. In this position we are inclined to think counsel is in error, by reason of the well-recognized difference between costs and fees. The difference is set out in a number of authorities, some of which may be found noted under the title "Costs," in 2 Words & Phrases, p. 1638, from which we quote as follows:

"Costs and fees are altogether different in their nature generally. The one is an allowance to a party of expenses incurred in the successful transaction or defense of a suit. The other is compensation to an officer for services rendered in the progress of the cause. *Bradley v. State,* 69 Ala. 318, 321; *Howard Building & Loan Ass'n v. Philadelphia & R. R. Co.,* 102 Pa. 220, 222; *Musser v. Good,* 11 Serg. & R. (Pa.) 247; *Crawford v. Bradford,* 2 South. 782, 783, 23 Fla. 404. The word 'costs' is a word of known significance. It signifies, when used in relation to the existence of legal proceedings, the sums prescribed by law as charges for the services enumerated in the fee bill. The terms 'fees' and 'costs' are often used interchangeably, as having the same application; but accurately speaking the term 'fees' is applicable to the items chargeable by law as between the officers or witnesses and the party whom he serves, while the term 'costs' has reference to the expenses of litigation as between litigants. *Alexander v. Harrison,* 28 N. E. 119, 120, 2 Ind. App. 47"

A supersedeas bond providing for the payment to the opposite party of all damages that he may sustain by reason of the appellate proceeding, and all costs in the Supreme Court as provided by the statute, is given primarily for the protection of the adverse party, and we know of no statute which requires the clerk to look to such bond for the fees fixed by law for the services he is required to render. While this bond is suggested by counsel

for plaintiffs in error in his brief, we are not certain that it is strictly involved in this controversy by reason of his waiver of the claim to have his case filed by reason thereof and his offer to pay the fees demanded after the rendition of the services. However, as shown above, we incline to the view that this could not change the situation in any way.

To support his claim, movant calls attention to the Session Laws of 1897, which purport to contain a fee bill for the clerks of the district and Supreme Courts of the territory, and refers us to a section thereof which provides that no fees allowed by said act shall be due or demandable until the service for which such fees are payable shall have been performed. Section 63, p. 179, Sess. Laws 1897. This necessarily raises the question of whether or not this act was one of the laws in force in the territory of Oklahoma at the time of its admission as a state, and of such a character that it would remain in force until altered or repealed by law. This presents the question at the outset of whether the territorial Legislature had the power and authority to fix and control the fees and compensation for the clerk of the Supreme Court, and, if not, in our judgment necessarily places upon us the duty of determining what law, if any, does govern. Section 13 of the Organic Act of the territory (Wilson's Rev. & Ann. St. 1903, § 73) provides:

"There shall be allowed to the attorney, marshal, and clerks of the Supreme and district courts, the same fees as are prescribed for similar services by such persons in chapter 16, title 'Judiciary,' of the Revised Statutes of the United States."

Section 828, c. 16, p. 635, of the Compiled Statutes of the United States of 1901, provides a complete schedule of the fees referred to in this provision. This federal law, under the authority of *Pitts v. Logan County,* 3 Okla. 719, 41 Pac. 584, and *United States v. MacMillan,* 165 U. S. 504, 17 Sup. Ct. 395, 41 L. Ed. 805, controlled up to the time of the admission of the state; the act of the territorial Legislature in conflict therewith being void. This being true, it necessarily follows that the language of section 63, *supra,* providing that fees allowed by the act

of the territorial Legislature shall not be due until the services shall have been performed, can have no application to this case, for the simple reason that the fees allowed to the clerks of the district and Supreme Courts were not provided for by the territorial act, but by the federal fee bill then in force in the territory of Oklahoma.

The question now arises whether said provisions of section 13 of the Organic Act and the statutes referred to applied and governed after the admission of the state. Section 17 of the Schedule to the constitution provides:

"The members of the board of agriculture, bank commissioner, clerk of the Supreme Court, and all other state officers, except as herein provided, or such as may be created, and all clerks and assistants, shall receive such compensation for their services as may be provided by law."

Constitutional provisions are intended to operate prospectively, and all doubts must be resolved in favor of such construction. 2 Lewis' Sutherland on Statutory Construction (2d Ed.) p. 1161, § 642. The rule appears to be settled that where the term "may be" is used, unless the contrary appears from the context, it is to be construed as meaning in the future. *Board of Commissioners of Pitkin County v. Aspen Mining & Smelting Company,* 3 Colo. App. 223, 32 Pac. 718; *Shoemaker, Auditor, et al., v. Smith et al.,* 37 Ind. 128. See also, for further cases citing and defining the phrase "may be," 5 Words & Phrases, p. 4447 *et seq.*

Now let us examine the context in the schedule, and see if the construction giving this phrase an operation *in futuro* is not the only one to which it is susceptible. Section 15 of the schedule provides for the compensation of the Governor, Lieutenant Governor, Secretary of State, Attorney General, State Treasurer, State Auditor, State Examiner and Inspector, Chief Mine Inspector, Labor Commissioner, Commissioner of Charities and Correction, and Corporation Commissioners, Superintendent of Public Instruction, and Insurance Commissioner. Section 16 provides that, until changed by the Legislature, the

salary of the Justices of the Supreme Court of the state shall be $4,000 per annum. It will thus be observed that salaries and compensation of all of the state officers are provided for in the Constitution, with the exception of the clerk of the Supreme Court, members of the Board of Agriculture, and Bank Commissioner. It is to be noted that section 17 in effect provides that such state officers as may be created, and all clerks and assistants (such officers, including the clerks and assistants, except the secretary of the Corporation Commission, would have to be created in the future or subsequent to that time), *shall* receive such compensation for their services as may be provided by law; and, of course, as such officers, clerks, and assistants, except the secretary of the Corporation Commission, had neither been created nor provided for, the term "as may be provided by law" in that case would not only literally, but also from the context, inevitably mean in the future, or contemplate future action by the Legislature. It is in this class of offiicals that the office under contemplation is placed.

But let us look further to the context. Section 18 of the Schedule provides as follows:

"Until otherwise provided by law, the terms, duties, powers, qualifications, and salary and compensation of all county and township officers, not otherwise provided by this Constitution, shall be as now provided by the laws of the territory of Oklahoma for like named officers.   *   *   *"

Here again, it seems to us, is made clear the intention of the framers that the phrase "as may be provided by law" in said section 17, *supra,* should relate solely to subsequent or future action, in that the language here used, as contradistinguished, is, "shall be as now provided by the laws of the territory of Oklahoma for like named officers." If the law in force was to apply to the clerk's office, is it not reasonable, in view of these minute details, that this intention would likewise have been so expressed—that this office would have been placed in this class, instead of a class all of which contemplated future action?

Again in section 10 of the Schedule we find:

"Until otherwise provided by law, incorporated cities and

towns, heretofore incorporated under the laws in force in the territory of Oklahoma or in the Indian Territory, shall continue their corporate existence under the laws extended in force in the state, and all officers of such municipal corporations at the time of the admission of the state into the Union shall perform the duties of their respective offices under the law extended in force in the state, until their successors are elected and qualified in the manner that is or may be provided by law. * * *"

Now, if "as may be provided by law" not only includes the future, but the past and present in this connection, why the necessity in this instance of inserting the words "that is or may be provided by law"? Why not say, "in the manner that may be provided by law?" These analogies might be further extended, and attention of those interested is called to the other sections of the Schedule; but the foregoing are, in our judgment, sufficient to indicate the rule as it presents itself to us.

One further thought in reference to section 17: If it was the intention of its framers that the existing officials provided for and named therein were to receive the same compensation that was provided for under the laws existing in the territory, and that this was affected by section 2 of the Schedule, then section 17 as to existing officers would perform no function whatever. It was a work of supererogation entirely, if by section 2 of the Schedule the salary and compensation of the existing officials named therein was brought over and made applicable within the state, for section 17 to provide that these same officials should have such compensation as may be provided by law; for these, under such a claim, they would have anyhow. As for the other officials mentioned therein, which as yet had no existence, it was an empty act to say that the Legislature might fix their salaries and compensation. To sustain the claim of counsel for respondent would be to hold that the convention did the empty, vain thing of again in section 17 declaring as a law that which they had just provided for in section 2. To concede this claim would leave section 17 without force or meaning, while the conclusion to which,

it appears to us, we are irresistibly driven, not only vivifies it, but causes it to breathe in harmony with the entire document. To our minds there is nothing against the construction which we place upon it, and everything for it. Moreover, it is our duty to construe this instrument so as to give all parts of it some force and effect, where this can be done and meet the intention of the lawmakers. This court, in the case of *Trapp, Auditor, v. Wells Fargo Express Co., 22 Okla. 377, 97 Pac. 1003*, Speaking to the rule just recognized, said in the syllabus:

"It is a proper rule of construction that the entire act or instrument is to be examined with a view of arriving at the true intention of each part, and that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, courts must harmonize them, if practicable, favoring that construction which will render every word operative, rather than one which makes some words idle and nugatory."

The construction which we have thus placed upon section 17 not only, in our judgment, is justified and required by its plain provisions, when taken in conjunction with the balance of the Schedule of which it is a component, but the history of the times incident to and surrounding this subject strengthens and makes clear the reasons underlying the same. In 1895 the Legislature of the territory of Oklahoma, desiring to relieve the citizens of the territory of some of the features of what was popularly known as the federal Fee Bill, passed an act setting out in detail fees which were deemed more reasonable and the proper ones to be charged by the clerks of the district and Supreme Courts. This act was by the territorial Supreme Court held void at the June term of the court immediately after its passage. *Pitts v. Logan County, supra*. Not thwarted or deterred by this action on the part of the court, the next territorial Legislature which met after that opinion was delivered again solemnly entered its protest against the continuation in force of the measure under contemplation by once more promulgating a fee bill to apply to these officials. These enactments, expressing the solemn purpose of the people of the

territory in the most impressive manner they could give voice to their will, were before the constitutional convention when it met. Hence it placed the compensation for the clerk of the Supreme Court separate and apart from all of the balance of the judicial officials of the state government, providing, as we have seen, that he should receive such compensation as may be provided by law. It is true the enactments of the Legislature were legally void and were without force as laws; but to our minds it is equally true that by their passage the people of the territory manifested their disapproval of the fee bill put in force by the Organic Act. These enactments failed as laws, but their historical significance is in no wise diminished thereby. The subject was not to the people of the territory a rightful subject of legislation; but they attempted to legislate upon it, and these attempts the constitutional convention had before it, just as we have them before us. Furthermore, it is doubtful, in our judgment, even · in the absence of section 17, that this law could be made applicable to the clerk of the Supreme Court of the state, conceding the office to be the same. Section 833, tit. 13, c. 16, p. 157, of the Revised Statutes of the United States of 1878 (U. S. Comp. St. 1901, p. 642), provides that the clerks of the Circuit and District Courts shall on the 1st days of January and July of each year make to the Attorney General (of the United States) a written return showing the fees and emoluments of their offices, and the necessary expenses, etc., and section 839 provides that the clerk, whose account should be audited and allowed by the proper accounting officer of the treasury, should not retain as his compensation a sum in excess of $3,500 a year. Whether or not this provision was at that time made to apply to the clerks of the district and Supreme Courts of a territory we are not advised, and it is not material to the · matter before us; but the Fifty-Ninth Congress passed an act appearing in volume 34 of the United States Statutes at Large, under the title "Judicial," at page 754 of that volume (Act June 30, 1906, c. 3914 [U. S Comp. St. Supp. 1907, p. 222]), which provides that the Attorney General (of the

United States) shall require the clerks of the territorial courts to report and account for all moneys received by them on account of, or as security for, fees and costs under such rules and regulations as he should prescribe. This was unquestionably the law under the territorial form of government, and was in force in the territory prior to Oklahoma's admission. We think it will scarcely be contended by respondent or any one else that the Schedule put this law in force in the state. Yet it was a law which related to the fees, compensation, and management of the office in question, and provided for an accounting between these officials and the authority under which they held their places. To hold that the fee bill was carried over and put into force would require us to either bring this portion of the law applicable thereto with it (a thing impossible), or to leave these officials with no current accountability whatsoever to any one. This, in our judgment, the constitutional convention would not and did not do. The act to our minds is inconsistent with and repugnant to the terms of the Schedule to the Constiution, and was not extended to, nor did it remain in force in, the state.

The Constitution of Utah was framed under an enabling act practically the same as ours (section 17, Act. Cong. July 16, 1894, 28 Stat. 107, c. 138, § 17), and the provisions of the Organic Act of that territory are practically the same as that of Oklahoma Territory, and the provisions relative to the judiciary, including the Supreme and district judges, are practically the same. Sections 1, 2, 3, 4, 5, art. 8, Const. 1895. Section 14, art. 8, provides:

"The Supreme Court shall appoint a clerk and a reporter of its decisions, who shall hold their offices during the pleasure of the court. Until otherwise provided, county clerks shall be ex officio clerks of the district courts in and for their respective counties, and shall perform such other duties as may be provided by law."

In the case of *State v. McNally*, 13 Utah, 28, 43 Pac. 920, the court said:

"Whilst there may be an office without an incumbent, there

cannot be an incumbent without an office. Some of the offices under the territorial government, such as the sheriffs, the county attorneys, the justices of the peace, and the constables, were continued under the state government, and their incumbents were also continued in them. Other offices expired with the territorial government, and the authority of their incumbents went with them. The office of judge of the Supreme Court of the territory expired with that organization. Some of the functions, both as judges and as courts, went to the Circuit and District Courts of the United States; others, to the district and Supreme Courts of the state. Their offices were not continued, and they were not made incumbents of offices created by the state Constitution. The same may be said of the clerks of such courts."

The offices of justices and clerks of the Supreme Court of Oklahoma Territory expired and were abrogated when said territory was erected into a state, and new courts and new offices, created by virtue of the Constitution, came into existence. The clerk of the Supreme Court of this state is a separate and independent officer from the clerk of the Supreme Court of Oklahoma Territory although he may succeed to some or all of the functions that were performed and exercised by the clerk of the Supreme Court of that territory.

We conclude, therefore, that there is no statute in force in the state of Oklahoma regulating the fees for the office of the clerk of the Supreme Court. But in the absence of statute it clearly appears that it was the intention of the constitutional convention that the clerk should receive compensation for his services, which was to be fixed by the Legislature of the state; and, such being a duty omitted, he is still entitled to demand and receive a reasonable compensation for all services he renders, the amount thereof and the terms to be determined by himself in the first instance, and in cases of dispute by the proper tribunal.

In view of this situation, and in the absence of a valid statute of our state providing for the recovery of fees for such services, and no decision of the Supreme Court of the territory or state covering the question before us, we turn to the decisions of other states for light and guidance. In the case of

*People ex rel. Maus v. Harlow,* 29 Ill. 43, we find that the Supreme Court of the state of Illinois, in a case of mandamus, where a party sought to have the clerk issue a summons, and on it being made out refused to pay the clerk in advance his fees before delivery, held:

"A clerk is not bound to deliver process until he is paid his fees, awarded him by law. Clerks may insist upon the payment of their fees, as their services are performed."

In the consideration of the case, Chief Justice Caton said:

"The case shows that plaintiff in the action applied for summons, which the clerk made out, and also made out his bill for fees allowed him by law for issuing the summons, payment of which he demanded, and without the payment of which he refused to deliver the process. And in this we have no doubt he was right. The clerk is entitled to his fees as the services are performed. In the case of *Morgan v. Griffin,* 1 Gilman (Ill.) 565, this court said: 'In contemplation of law, the parties respectively advance such costs as they make during the progress of the cause.' So far as we are advised, it has been uniformly held, both by the Supreme and the circuit courts, that clerks may insist upon their fees as their services are performed; and this we have no doubt is the law."

Another case which seems to us to be more nearly in point upon the question is that from the Supreme Court of Iowa. *Ripley v. Gifford,* 11 Iowa, 367. In that case it appears that the Legislature, it was claimed unintentionally, repealed the law providing for the fees of the clerk of the Supreme Court, along with some other officials. Hence it will be seen that the conditions there existing were practically the same as exist in Oklahoma at this time in reference to the amount of fees due the clerk or the time for payment thereof, in that there was no provision of the statute fixing the time when the same were due and demandable. The court held in the syllabus:

"When the compensation of an officer is not fixed by law at the time he renders service, he may demand a reasonable compensation in advance, or retain papers and documents in his possession in and about which he has rendered service, until such

compensation is paid; and such costs should be taxed against the losing party."

In the consideration of the cause, Justice Wright said:

"There is no statute fixing the fees of Secretary of State clerk of the Supreme Court, recorder, sheriff, coroner, constable, notary public, justice of the peace, or county surveyor. And yet beyond controversy they are each entitled to compensation for their services. This compensation, if not fixed and settled at the time the services are required, would be what the same were reasonably worth. Each officer may also, in our opinion, if he so desire, require the prepayment of fees for the services demanded, or for any service rendered he may retain any papers or documents in his posssssion in and about which he has bestowed labor, until the reasonable value of said services shall be paid. Thus, if the clerk of the Supreme Court or a justice of the peace is required to issue an execution, he may either demand the prepayment of his fee therefor, or refuse to deliver the same after its preparation, until such fee shall be paid."

To us the foregoing authorities present reasonable authority for holding that a party requiring the services of the clerk of the Supreme Court may lawfully be required to make payment therefor at the time when the request for services is made, and that the clerk may lawfully decline to render the services until his reasonable fees are tendered therefor. The true rule seems to be that when the compensation of an officer is not fixed by law at the time he renders a service, but it clearly appears that it was the intention of the lawmakers that he should receive a reasonable compensation, to be fixed by law, until it is so fixed he is entitled to a reasonable compensation, to be determined by the proper tribunal. *Ripley v. Gifford,* 11 Iowa, 367; *Musser v. Good,* 11 Serg. & R. (Pa.) 247; *Bradley v. Jefferson County,* 4 G. Greene (Iowa) 300; *Matter of Public Parks,* 27 Hun. (N. Y.) 305; *Kip v. Buffalo,* 123 N. Y. 152, 25 N. E. 165.

The view that the clerk may lawfully claim his pay at the time the service is rendered, it seems to us, is strengthened when we consider the fact that there are but few cases where supersedeas bonds are filed which provide security for costs in the Supreme

Court, and that there is no statutory provisions for a bond solely covering the same. The clerk serves a multitude of people, nearly, if not quite all of whom are necessarily entire strangers to him, residing in many instances remote from his office, and by virtue of which great expenses would be entailed for the collection of fees for services rendered, were the payment not made at the time. Indeed, he ought not to be required to assume and carry the risk of, in many instances, being unable to collect at all. In the case at bar the only difference between the parties is whether or not the fee shall be paid at the time the service is requested to be performed, or that delay in the payment of the fee be had until after the service is performed. We believe, from the foregoing authorities, as well as the reason of the entire matter, that it logically follows the clerk is entitled to demand his payment at the time when he is called upon to file the papers in the case, and, on its refusal, to withhold the service.

It is therefore directed that the clerk shall furnish the plaintiffs in error, or their attorney of record, a schedule of the fees demanded for the filing of the case, upon receipt of which it shall become their duty to promptly remit the same to the clerk, the same to be done within 30 days from the date of such notice, and in the event of their refusal to so remit within such time the cause will be stricken from the docket. This case having been docketed as of the date when it was first tendered, the plaintiffs in error will suffer no prejudice by the delay occasioned by this controversy. The time for filing brief by the plaintiffs in error will begin to run from the date they, or their attorney, are advised of our conclusions herein, and the time for counsel for defendant in error to prepare and serve brief will likewise be extended.

This court has been duly impressed with the importance of the question involved in this case, and it has had the painstaking consideration of every member thereof. In deliberating upon it, we have not only examined the laws under construction, but have extended our investigation to other Constitutions and judicial

opinions, particularly those of states where questions similar to this have arisen, and we are convinced that the conclusion to which we have come is not only responsive to the plain terms of the Constitution, but is expressive of the intention of the framers and of the people adopting the same.

Hayes, Turner, and Williams, JJ., concur; Kane, C. J., dissents.