STATE EX REL. A. C. BISHOP, ATTORNEY GENERAL, *v.* JAMES C. McNALLY.

### TERRITORIAL PROBATE JUDGE—TERM OF OFFICE.

1. The president of the United States appointed defendant probate judge of Salt Lake county on the 13th day of February, 1895, for a term of two years. The state of Utah was admitted to the Union on the 4th day of January, 1896. The defend- ant contended that by section 9, art. 24, of the constitution of Utah, he was entitled to hold his office as probate judge un- til the end of the term for which he was appointed. *Held,* that the government of the state was not a continuation of the territory, and that it was competent for the people of the new state, in their sovereign capacity, to continue in force, or not, the probate courts, or to extend the power and authority of the officers thereof.

2. The provision of section 9, art. 24, "And until the expiration of the term of office of the probate judges, such probate judges shall perform the duties now imposed upon them by the laws of the territory," must be interpreted by the other provisions of the same section, and by those of sections 1

and 7, of article 8, in which the intent to abolish probate courts is clearly shown.

3. This manifest intention to dispense with the probate courts, and to give to the district courts jurisdiction in probate matters, leaves the incumbent without an office, and therefore without any authority under the constitution of the new state, after the expiration of the term fixed by the constitution (section 9, art. 24) for the cessation of authority under the territorial government, viz., January 13, 1896.

(No. 677.   Decided Feb. 4, 1896.   43 P. R. 920.)

Action by the State of Utah, on the relation of Alexander C. Bishop, attorney general, against James C. McNally.   *Demurrer overruled.*

*Alexander C. Bishop* and *C. S. Varian,* for plaintiff.

*J. G. Sutherland, C. C. Dey, H. P. Henderson,* and *John M. Zane,* for defendant.

ŻANE, C. J.:

This suit was instituted by the attorney general to oust the defendant from the office of probate judge of Salt Lake county. To the complaint the defendant interposed a demurrer on the ground that it does not state facts sufficient to constitute a cause of action. The facts averred, so far as it is necessary to state them, are that the president of the United States appointed the defendant probate judge of Salt Lake county on the 13th day of February, 1895, for the term of two years; that the state of Utah was admitted to the Union on the 4th of January, 1896. The relator insists that the defendant's term ended on the 13th day of January, 1896, while the defendant insists that it will not expire until February 13, 1897. The determination of the question depends upon the meaning to be given to section 9 of article 24 of the state constitution, and as the intent

of that section is not clearly expressed, we will consider it in the light of other provisions of the same instrument or by such propositions of law as we may think shed light upon it.

The defendant is a probate judge under the late territory, and the dispute is as to his term under the state government. The latter government is not a continuation of the former. They are separate and distinct. The territorial government derives its authority from congress, and congress derives its authority from the people of the United States, while the state government derives its authority from the people of the state. The latter is a sovereignty. The territory was not. While such is their nature and relationship, section 2 of article 24 of the constitution of this state provides that all laws of the territory in force when the constitution should be adopted should remain in force until they should expire by their own limitations, or until altered or repealed by the state legislature. In effect, this was the adoption by the state of territorial laws. This the convention had the power to do, for the people of the state were in the possession of all the powers of government not delegated by the constitution of the United States to the federal government, or prohibited by it to the states. The people exercised sovereign power in adopting their state government. Subject to the ratification by the people, the convention had the power to continue under the state the laws of the territory creating and defining the office of probate judge. They also had the power to continue in office the incumbents of those offices, or to provide that such incumbents might fill similar offices created by the state. Section 10 of the same article declares that "all officers, civil and military, now holding their offices and appointments in this territory by authority of law, shall continue to hold and

exercise their respective offices and appointments, until superseded under this constitution." While there may be an office without an incumbent, there cannot be an incumbent without an office. Some of the offices under the territorial government, such as the sheriffs, the county attorneys, the justices of the peace, and the constables, were continued under the state government, and their incumbents were also continued in them. Other offices expired with the territorial government, and the authority of their incumbents went with them. The office of judge of the supreme court of the territory expired with that organization. Some of the functions, both as judges and as courts, went to the circuit and district courts of the United States; others, to the district and supreme courts of the state. Their offices were not continued, and they were not made incumbents of offices created by the state constitution. The same may be said of the clerks of such courts. Section 1 of article 8 of the constitution declares that "the judicial power of the state shall be vested in the senate sitting as a court of impeachment in a supreme court, in district courts, in justices of the peace, and such other courts inferior to the supreme court as may be established by law." In this section the courts which the constitution established are mentioned, and the probate court is not named. It is true that the legislature may establish other courts inferior to the supreme court. Section 7 of the same article provides that "the district courts shall have original jurisdiction, in all matters, civil and criminal, not excepted in this constitution, and not prohibited by law." The term, "all matters, civil and criminal," would include matters within the jurisdiction of the probate court. This section, and section 4 of the same article, give the supreme and district courts concurrent original jurisdiction of mandamus, certiorari, prohibition, quo warranto,

and habeas corpus. Section 8 of the same article, in effect, gives justices of the peace such original jurisdiction as they had at law under the territorial government. Whether the original jurisdiction of the district court is exclusive as to all other matters, civil and criminal, is a question. If the legislature were to establish other courts than those named in section 1, above quoted, we incline to the opinion that original concurrent jurisdiction with the district courts might be conferred upon them, in matters civil and criminal, but not exclusive. Until such courts shall be created by the legislature, all the judicial power of the state will be in the courts mentioned in section 1, above quoted; and the district courts of the state, except as above stated, have exclusive original jurisdiction of all matters, civil and criminal. Under the constitution, as the law now stands, there is no room for a probate court or a probate judge, except as provided in section 9 of article 24 of the constitution, which is as follows: "When the state is admitted into the Union, and the district courts in the respective districts are organized, the books, records, papers, and proceedings of the probate court in each county, and all causes and matters of administration pending therein, upon the expiration of the term of office of the probate judge, on the second Monday in January, 1896, shall pass into the jurisdiction and possession of the district court, which shall proceed to final judgment or decree, order or other determination in the several matters and causes, as the territorial probate court might have done, if this constitution had not been adopted. And until the expiration of the term of office of the probate judges, such probate judges shall perform the duties now imposed upon them by the laws of the territory. The district court shall have appellate jurisdiction over the decisions of the probate court, as now provided by law until such latter

courts expire by limitation." A clear intention is expressed in the first clause of this section, when considered apart from the rest of the section, to transfer all matters pending in the probate courts to the jurisdiction of the district courts on the second Monday of January, 1896, while an intention may be inferred, from the language of the second and third clauses of the same section, if considered apart from the first clause, to permit probate judges to hold their terms as limited by the territorial law. We must consider the whole section with other provisions of the same instrument throwing light upon it. The terms of service of those judges under the territory expired with that government. Their authority went out with it. Afterwards they held by state authority, and for the term fixed by it. The constitution manifests a general intent to dispense with probate courts, and to give the district courts jurisdiction of probate matters.

From the foregoing considerations, we are disposed to hold that the framers of the constitution intended, by section 8, under consideration, to extend the term of probate judges under the state government to the second Monday in January, 1896, and no further. The demurrer of the defendant to the plaintiff's complaint is overruled.

BARTCH and MINER, JJ., concur.