## UNITED STATES *v.* McMILLAN.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 164. Argued January 21, 1897. — Decided February 15, 1897.

The clerk of a district court of a Territory is bound to account to the United States for fees received by him from private parties in civil actions, and from the Territory, on account of territorial business.

The clerk of a district court of a Territory is not bound to account to the United States for sums received for his services in naturalization proceedings.

This was an action brought December 31, 1892, in the Third Judicial District Court of the Territory of Utah, by the United States against Henry G. McMillan, clerk of that court, and the sureties on his official bond, to recover the amount of certain fees received by him and not accounted for.

The complaint contained two counts, the first of which alleged that "between January 8 and December 31, 1889, inclusive, the said Henry G. McMillan, while clerk as aforesaid, and as such, earned, collected and received from different sources, as the fees and emoluments of his said office, $7458.70, of which sum $988.90 was earned and received in United States business; $3776.00 for declarations of intention and naturalizations; and $2693.80 from private persons in civil litigation, and from the Territory of Utah, on account of territorial business "; that he was entitled to retain, of the moneys aforesaid, the sum of $1984.93 as his personal compensation, and the further sum of $1744.05 as the reasonable and necessary expenses of his office, as allowed by the Attor-

ney General of the United States; that it was his duty, as clerk aforesaid, on January 31, 1890, to account for and to pay over to the United States all moneys, so earned and received by him as aforesaid, in excess of these two sums; and that he neglected and failed so to do.

The second count was precisely like the first, except that it related to fees received between January 1 and December 31, 1890, inclusive, and specified different sums.

The defendants demurred to the complaint, as not stating facts sufficient to constitute a cause of action. The court sustained the demurrer, and the attorney for the United States saying that he could not amend the complaint, judgment was rendered for the defendants. The United States appealed to the Supreme Court of the Territory, which affirmed the judgment. 10 Utah, 184. The United States sued out this writ of error.

*Mr. Assistant Attorney General Dodge* for appellants. *Mr. Assistant Attorney Binney* was on his brief.

*Mr. Arthur Brown* for appellees. *Mr. J. L. Rawlins* was on his brief.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The questions presented by the case are whether "the fees and emoluments of his office," for which it is the duty of the clerk of a district court of the Territory of Utah to account to the United States, include: 1st. Fees received by him from private parties in civil actions, and from the Territory, on account of territorial business; 2d. Sums received by him for declarations of intention, and for naturalizations, of aliens?

The true answer to each of these questions appears to us, if not to be found in, at least to be necessarily inferred from, one of two judgments of this court, both delivered by Mr. Justice Blatchford, who, from his long experience in the

District and Circuit Courts, was peculiarly familiar with questions of this kind. *United States* v. *Averill*, 130 U. S. 335; *United States* v. *Hill*, 120 U. S. 169. The weight of those decisions, as applied to the case at bar, may be the better appreciated by recapitulating the legislation supposed to affect the case.

The Congress of the United States, by the act of February 26, 1853, c. 80, entitled "An act to regulate the fees and costs to be allowed to clerks, marshals and attorneys of the Circuit and District Courts of the United States, and for other purposes," enacted, in section 1, that, in lieu of the compensation then allowed by law, the fees and costs therein specified, and no other compensation, should be taxed and allowed to "attorneys, solicitors and proctors in the United States courts, to United States district attorneys, clerks of the District and Circuit Courts, marshals, witnesses, jurors, commissioners and printers, in the several States"; and, in section 3, that such district attorneys, clerks and marshals should make half-yearly returns in writing to the Secretary of the Interior, "embracing all the fees and emoluments of their respective offices, of every name and character."; that "no clerk of a District Court, or clerk of a Circuit Court, shall be allowed by the said Secretary to retain, of the fees and emoluments of his said office, or, in case both of said clerkships shall be held by the same person, of the said offices, for his own personal compensation, over and above the necessary expenses of his office, and necessary clerk hire included, also to be audited and allowed by the proper accounting officers of the Treasury, a sum exceeding three thousand five hundred dollars per year for any such district clerk or circuit clerk, or at and after that rate for such time as he shall hold the office"; and that every such officer should, with each return made by him, pay into the Treasury of the United States "any surplus of the fees and emoluments of his office, which his half-yearly return, so made as aforesaid, shall show to exist over and above the compensations and allowances hereinbefore authorized to be retained and paid by him." 10 Stat. 161, 166.

That statute did not mention the clerks of the territorial

courts. But by section 12 of the Civil Appropriation Act of · March 3, 1855, c. 175, the provisions of the act of 1853 were extended to Utah and other territories " as fully, in all particulars, as they would be, had the word ' Territories' been inserted in " the clause last quoted above from section 1 of that act, " after the word ' States,' and the same had read ' in the several States and in the Territories of the United States' ; this clause to take effect from and after the date of said act, and the accounting officers will settle the accounts within its purview accordingly." 10 Stat. 671.

By the express words, and the necessary effect, of this section of the act of 1855, " the provisions," that is to say, all the provisions, of the act of 1853, and, among others, those concerning " clerks of the District and Circuit Courts," " in the several States," were extended to Utah and other Territories, " as fully, and in all particulars," as if the clause " in the several States " had read " in the several States and in the Territories of the United States." Clerks of district or circuit courts in the Territories were thus subjected, not only to the fee bill established by the act of 1853, but also to the directions of that act, that " clerks of the District and Circuit Courts ". should be allowed no other compensation than the fees and costs therein specified; that they should make half-yearly returns, " embracing all the fees and emoluments of their respective offices, of every name and character "; that " no clerk of a District Court, or clerk · of a Circuit Court," should be allowed to retain, of the fees and emoluments of his office, or, if holding both clerkships, of the two offices, for his personal compensation, a sum exceeding. $3500 a year.; and that every such clerk should pay any surplus into the Treasury of the United States.

Notwithstanding this Congressional legislation, the legislature of the Territory of Utah, by a statute of January 21, 1859, adopted a fee bill for the clerks and other officers of the Supreme Court and district courts of the Territory, differing from the fee bill established by the acts of Congress of 1853 and 1855. Laws of Utah of 1851–1870, p. 71. And by a territorial statute of February 20, 1874, c. 23, a new fee bill was

adopted, also differing from that established by the acts of
Congress.    Laws of Utah of 1874, p. 37.

By chapter 16 of Title 13, entitled " The Judiciary," of the
Revised Statutes of the United States, approved June 22, 1874,
Congress again, in section 823, established a fee bill, founded
on that of 1853, and enacted that the fees and costs therein
prescribed, " and no other compensation," should " be taxed
and allowed to " " clerks of the Circuit and District Courts,"
and to other officers and persons in those courts, " in the
several States and Territories, except in cases otherwise ex-
pressly  provided  by  law " ;  in  section  828,  prescribed  the
" clerks' fees " for different items of services; in sections 833,
839 and 844, substantially reënacted the provisions of section
3 of the act of 1853, relating to the returns, the limit of the
amount to be retained, (transferring, however, the supervision
from the Secretary of the Interior to the Attorney General,
in accordance with the act of June 22, 1870, c. 150, § 15 ; 16
Stat. 164 ;) and the payment of the surplus into the Treasury
of the United States, by clerks of District and Circuit Courts ;
and, in section 1883, provided that the fees and costs to be
allowed " to the clerks of the Supreme and district courts,"
and other officers, " in the Territories of the United States,
shall be the same for similar services by such persons, as pre-
scribed in chapter 16, Title ' The Judiciary,' and no other
compensation shall be taxed or allowed."    And by the act of
Congress of June 23, 1874, c. 469, § 7, " the act of the Con-
gress of the United States, entitled ' An act to regulate the
fees and costs to be allowed clerks, marshals and attorneys
of the Circuit and District Courts of the United States, and for
other purposes,' approved February 26, 1853, is extended over
and shall apply to the fees of like officers in said Territory of
Utah " ; " and all laws of said Territory, inconsistent with the
provisions of this act, are hereby disapproved."    18 Stat. 256.

The words " except in cases expressly otherwise provided
by law," in section 823 of the Revised Statutes, doubtless re-
ferred to the cases (also excepted out of section 839) mentioned
in sections 840 and 842, by the first of which " the clerks of
the several Circuit and District Courts in California, Oregon

and Nevada," were entitled to charge double fees, and to retain and be allowed a double maximum compensation ; and by the other of which, in prize causes,. the clerks might be allowed to retain an additional compensation not exceeding one half of the usual maximum.

With those exceptions, Congress thus, in 1874, by acts passed on two successive days, the Revised Statutes on June 22, and the other act on June 23, substantially reënacted, as including the Territories, all the provisions of the acts of 1853 and 1855 ; and, in the act of June 23, 1874, as if to emphasize its intention to cover the whole subject, both of the fees to be taxed, and of the maximum amount thereof to be retained, by every clerk of a district court in the Territory of Utah, expressly disapproved "all laws of said Territory, inconsistent with the provisions of this act."

Yet the fee bill which had been adopted by the territorial statute of February 20, 1874, was afterwards retained by the legislature of Utah in codifying the statutes of the Territory. Compiled laws of Utah of 1876, §§ 2378 *& seq.* ; of 1888, §§ 5441 *& seq.*

By a provision inserted in the Civil Appropriation Act of March 3, 1883, c. 143, the clerk of the Supreme Court of the District of Columbia was subjected to sections 833 and 844 of the Revised Statutes. 22 Stat. 631.

In *United States* v. *Averill,* 130 U. S. 335, this court, at October term, 1888, reversing the judgment of the Supreme Court of the Territory of Utah, reported in 4 Utah, 416, adjudged that Congress, by the. acts above referred to, in extending to clerks of the district courts of the Territory the statutes applicable to clerks of District and Circuit Courts of the United States in a State of the Union, included not only those provisions which regulated the separate items and sums of fees to be taxed and collected by the clerk, but also those provisions which restricted the aggregate amount allowed or permitted to be retained by him, and those which required him to pay the surplus into the Treasury of the United States.

Mr. Justice Blatchford, speaking for this court, after reviewing the legislation of Congress upon the subject, concluded as

follows: "The fees mentioned in section 1883, as 'to be allowed' to clerks of the district courts in the Territories, cover the fees to be retained by them for compensation for services. Sections 823 and 839 are in chapter 16 of the Title mentioned. They prescribe the fees to be allowed to, and retained by, clerks of District Courts; 'and no other compensation' can, under section 1883, be allowed to be retained by clerks of the district courts in Utah for personal compensation, than is, by the provisions of chapter 16 of the Title mentioned, prescribed to be allowed to be retained by the clerks of the District Courts named in section 839, for personal compensation." 130 U. S. 340, 341.

In that case, indeed, no question was presented as to the classes of fees to be accounted for, and to be included in ascertaining the amounts to be retained, by the clerks of the district courts of the Territory. And the position of the appellee, that in all cases to which the United States were not a party, he was entitled to fees taxed according to the territorial fee bill, and was not bound to account for them to the United States, is supported by an opinion given by the Attorney General to the First Comptroller of the Treasury on December 2, 1891, (a copy of which was annexed to the appellee's brief,) as well as by the opinions of the Supreme Court of the Territory in *Marte* v. *Ogden City Railway*, 9 Utah, 459, and in the present case. 10 Utah, 184.

But that position appears to us to be inconsistent with the manifest intent of Congress, apparent upon the face of the acts above referred to, and with the reasoning upon which this court based its decision in *United States* v. *Averill*, above cited.

Doubtless, the courts of a Territory are not, strictly speaking, courts of the United States, and do not come within the purview of acts of Congress which speak of "courts of the United States" only. *Clinton* v. *Englebrecht*, 13 Wall. 434, 447; *Reynolds* v. *United States*, 98 U. S. 145, 154; *McAllister* v. *United States*, 141 U. S. 174; *Thiede* v. *Utah*, 159 U. S. 510, 514, 515, and other cases there cited. But it is equally indubitable that Congress, having the entire dominion and sovereignty, national and municipal, Federal and state, over

the Territories of the United States, so long as they remain in the territorial condition, may itself directly legislate for any Territory, or may extend the laws of the United States over it, in any particular that Congress may think fit. As said by Chief Justice Waite, speaking for this court, "Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government. It may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments. It may do for the Territories what the people, under the Constitution of the United States, may do for the States." *National Bank v. Yankton County*, 101 U. S. 129, 133. See also *Mormon Church v. United States*, 136 U. S. 1, 44; *Shively v. Bowlby*, 152 U. S. 1, 48, and other cases there cited.

By the organic act of the Territory of Utah, as of other Territories of the United States, the legislative power of the Territory extended only " to all rightful subjects of legislation, not inconsistent with the Constitution and laws of the United States "; all statutes of the Territory, if disapproved by Congress, were " to be null and of no effect "; and the Constitution and all laws of the United States, not locally inapplicable, were extended over and declared to be in force in the Territory. Act of September 9, 1850, c. 51, §§ 6, 17; 9 Stat. 454, 458; Rev. Stat. §§ 1850, 1851, 1891.

In each Territory, the Supreme Court and the district courts were established, the general nature of their jurisdiction defined, and the mode of appointment of their clerks prescribed, by Congress, as appears in Title 23 of the Revised Statutes of the United States. By section 1865 of those statutes, the district courts were to be held by one of the Justices of the Supreme Court of the Territory, appointed by the President under the Constitution and laws of the United States. The district courts of the Territory were vested, by section 1868, with general " chancery as well as common law jurisdiction "; and by section 1910, with " the same jurisdiction, in all cases arising under the Constitution and laws of the United

States, as is vested in the Circuit and District Courts of the
United States"; with a right of appeal to the Supreme Court
of the Territory. And by section 1871 it was provided that
there should be but one clerk of each district court in the
Territory, appointed and designated by the presiding judge,
as well as that "only such district clerk" should be entitled to
a compensation from the United States.

Congress, then, in the exercise of its sovereign and supreme
power of legislation over the Territories of the United States,
had extended, in the clearest and fullest manner, to the clerks
of the district courts of the Territories, all the provisions of
the statutes of the United States, establishing a fee bill, and
restricting both the sums of the fees and emoluments to be
received, and the maximum amount thereof to be retained, by
the clerks of the courts of the United States held within a
State; and it had expressly disapproved all laws of the Terri-
tory of Utah, inconsistent with the legislation of Congress.

Among the provisions of the act of 1853, and of chapter 16
of Title 13 of the Revised Statutes, expressly extended by
Congress to the Territories, is the provision that the maximum
personal compensation of a clerk of a District Court, or of a
Circuit Court, of the United States shall be no greater if he
holds both clerkships, than if he holds only one. This clearly
indicates the intention of Congress that the maximum com-
pensation of the clerk of a territorial district court should not
be increased even if his fees and emoluments were derived
from two distinct sources of authority.

But the fees and emoluments of the appellee were not
derived from two offices or from two sources of authority, but
f·  )m a single office and a single appointment. Each district
court of the Territory, vested by Congress with the jurisdic-
tion, which the Circuit and District Courts of the United
States have, over cases arising under the Constitution and laws
of the United States, and also with general jurisdiction, at
law and in equity, was, in the execution of either branch of
its authority, whether exercising Federal or general jurisdic-
tion, one and the same court, deriving its existence and its
judicial powers from Congress; and its clerk, whether dealing

with Federal or with territorial business, was one and the same clerk, holding a single appointment under an act of Congress and from a judge commissioned by the President of the United States.

Whenever Congress has considered the amount of the compensation authorized to be received and retained by the clerk of a court, either of the United States, or of a Territory, to be insufficient, it has authorized him to charge double fees, and to be allowed a double maximum compensation, as in the courts of the United States held in the States of California, Oregon and Nevada, by section 840 of the Revised Statutes, above cited ; or to tax double fees, without increasing his maximum compensation, as in the courts of the Territories of New Mexico and Arizona, by the act of August 7, 1882, c. 436.   22 Stat. 344 ; McGrew v. United States, 23 C. Cl. 273.

The United States have no greater interest, in cases to which they are not a party, in a court of the United States, than in a territorial court.   The acts of Congress, regulating the fees to be received, the accounts to be rendered, and the compensation to be retained, by the clerks, are no more limited to cases or fees in which the United States are interested, in the district courts of the Territories, than in the Circuit and District Courts of the United States.

For these reasons, we are of opinion that the fees, received by the appellee from private parties in civil actions, and from the Territory, on account of territorial business, must be included in his returns, and be considered in computing the aggregate compensation to be allowed to and retained by him ; and that, to this extent, the judgment of the Supreme Court of the Territory is erroneous, and must be reversed.

The question of the appellee's right to retain, or his duty to account for, sums received by him in naturalization proceedings, depends upon distinct and peculiar considerations.

The only place, it is believed, in the statutes of the United States, in which fees received by the clerk in such proceedings have ever been mentioned, is in one of the earlier Naturalization Acts.   The act of April 14, 1802, c. 28, enacted, in section 1, that an alien's declaration of intention to become

a citizen might be made before a court of record of one of the States, or of a Territory of the United States, or before a Circuit or District Court of the United States; and, in section 2, that a report in behalf of an applicant for naturalization, stating his name, birthplace, age, nation and allegiance, the country whence he migrated, and the place of his intended settlement, should be received and recorded by the clerk of the court; and that the clerk should receive fifty cents for recording such report, and fifty cents for a certificate thereof under his hand and seal of office. 2 Stat. 153. The provision as to clerk's fees has been omitted in the later Naturalization Acts. Conkling's U. S. Pract. (4th ed.) 722. Rev. Stat. Tit. 30; Act of February 1, 1876, c. 5; 19 Stat. 2. And no act of Congress, regulating the fees and accounts of clerks of courts, has fixed the sums which they might charge, or specifically required them to account to the United States, for services performed for aliens presenting to the court, through the clerk, preliminary declarations of intention to become citizens, or final applications for naturalization.

At the time of the passage of the Naturalization Act of 1802, above referred to, the only statutes affecting the compensation of clerks of the Circuit and District Courts of the United States fixed their compensation at five dollars a day for attending court; ten cents a mile for travel; such fees as were allowed in the Supreme Court of the State; and a reasonable compensation, to be allowed by the court, for any kind of service for which the laws of the State made no allowance. Acts of March 3, 1791, c. 22, § 2; May 8, 1792, c. 36, § 3; 1 Stat. 217, 277. The earliest legislation restricting the aggregate amount which clerks might retain, or requiring any returns from them, was in the Appropriation Act of March 3, 1841, c. 35; and the provisions of section 3 of the act of 1853, already cited, had their origin in the Appropriation Act of May 18, 1842, c. 29, No. 167, which, however, vested in the Secretary of the Treasury the supervisory power over their accounts, afterwards transferred to the Secretary of the Interior by the act of March 3, 1849, c. 108, § 4, and to the Attorney General by the act of June 22, 1870, c. 150, § 15. 5 Stat. 427, 483; 9

Stat. 395; 16 Stat. 164.   By the act of August 16, 1856, c. 124, § 1, reënacted in section 846 of the Revised Statutes, their accounts were to be examined and certified by the District Judge, before being presented to the accounting officers of the Treasury for settlement; and to be then subject to revision upon their merits by those officers.   11 Stat. 49.

The case of *United States* v. *Hill*, 120 U. S. 169, arose in this way: It was an action brought December 4, 1884, in the Circuit Court of the United States for the District of Massachusetts, by the United States upon the official bond of the clerk, appointed in 1879, of the District Court for that district, to recover a large amount of fees of one dollar and two dollars each, respectively, charged and received by him for a declaration of intention to become a citizen, and for a final naturalization and certificate thereof.   The judgment of the Circuit Court, reported in 25 Fed. Rep. 375, in favor of the defendants, was affirmed by this court, speaking by Mr. Justice Blatchford, at October term, 1886, upon the following grounds: Section 823 of the Revised Statutes, reënacting section 1 of the act of 1853, applies *prima facie* to taxable costs and fees in ordinary suits between party and party prosecuted in a court.   There is no specification of naturalization matters in the fees of clerks.   From as early as 1839, it had been the practice of the clerks of the courts of the United States for that district to charge the fees of one dollar and two dollars in naturalization proceedings, in gross sums, without any division for specific services according to any items of the fee bill. The clerk of the District Court had never included these fees in his returns of fees and emoluments.   From 1842 and including 1884 his accounts were examined and approved by the District Judge; they then went from 1842 to 1849 to the Secretary of the Treasury, from 1849 to 1870 to the Secretary of the Interior, and since 1870 to the Attorney General; and they were, during this long period, examined and adjusted by the accounting officers of the Treasury, with the naturalization fees not included.   This long practice amounted to a contemporaneous and continuous construction of the statute by the concurring interpretation of judicial and executive officers

charged with the duty of carrying out its provisions. 120 U. S. 181, 182.

After that decision, the clerks of the courts of the United States in Massachusetts, and in some other States, at least, continued to omit, in the returns of their official fees and emoluments, sums received for their services in naturalization proceedings; and attempts made, from time to time, to require them to include such fees in their returns, have proved unsuccessful. *United States* v. *Hill*, 123 U. S. 681; Attorney General's Report for 1890, xx; 52d Congress, 1st sess. H. R. Bills 9612, 9613, and Reports No. 1966, pp. 22, 23, and Nos. 1969, 1970; 53d Congress, 1st sess. H. R. Bill 3963, and Report No. 111.

In the Fifty-second Congress, on July 21, 1892, the Committee on the Judiciary of the House of Representatives reported a bill, approved by the Attorney General and by the First Comptroller of the Treasury, entitled "A bill to amend section 833 of the Revised Statutes of the United States, relating to semi-annual returns of fees by district attorneys, marshals and clerks," and purporting to amend that section by inserting, after the words "all fees and emoluments of his office, of every name and character," the words "including all naturalization fees," and by requiring each clerk's return to contain "a true statement of all naturalization fees." On January 17, 1893, the bill was amended in the House by adding at its close these words: "That in each of the three judicial districts of the State of Alabama there shall be a district attorney and a marshal"; and, as amended, was passed by the House and sent to the Senate. On February 13, 1893, the Committee on the Judiciary of the Senate reported that the bill be amended by striking out all after the enacting clause, except the words which had been added by amendment in the House; and the bill in this shape, with its title amended accordingly, and thus leaving out everything relating to returns of fees, was passed by both Houses, vetoed by the President and passed over the veto. 52d Congress, 1st sess. H. R. Bill 9612, Report No. 1969; 24 Congr. Rec. 649, 1508, 1582, 1656, 1661, 2287, 2381, 2433, 2523, 2524; Act of March 3, 1893, c. 220; 27 Stat. 745.

The Judiciary Committee of the House of Representatives, on the same day on which they reported that bill, also reported a bill, having the like approval, entitled "A bill to amend section 828 of the Revised Statutes of the United States, relating to clerks'. fees," and purporting to amend that section by adding, at the end thereof, these words: "For filing declaration of intention to become a citizen by an alien, one dollar; for final papers and all services connected therewith, two dollars." This bill, after being passed by the House, was referred to the Committee on the Judiciary of the Senate, and no further proceedings thereon appear to have been had. 52d Congress, 1st sess. H. R. Bill 9613, Report No. 1970; 24 Congr. Rec. 650, 684.

In the next Congress, a bill embodying the provisions of those two bills was reported by the Committee on the Judiciary of the House of Representatives, passed by the House, referred to the Committee on the Judiciary of the Senate, and not afterwards heard of. 53d Congress, 1st sess. H. R. Bill 3963, Report No. 111; 25 Congr. Rec. 2608, 2657, 2663, 2710.

Congress not having legislated upon the subject since the decision of this court in *United States* v. *Hill,* 120 U. S. 169, and no special usage or sound reason being shown for not applying a uniform rule in all the courts established by authority of Congress in the States and in the Territories, the Supreme Court of the Territory of Utah rightly held, in accordance with that decision, that the appellee was not obliged to return to the United States, as a part of the emoluments of his office, sums received for his services in naturalization proceedings.

But the erroneous ruling of that court upon the other branch of the case requires its

*Judgment to be reversed, and the case remanded (pursuant to the act of July* 16, 1894, *c.* 138. § 17; 28 *Stat.* 111;) *to the Circuit Court of the United States for the District of Utah for further proceedings in conformity with this opinion.*