## THE WHITE SEAL.

(Fourth Division. Fairbanks. September 14, 1910.)

### No. 1494.

1. SEAMEN (§ 12*)—DISCHARGE.

The engineer on a boat plying on the interior rivers of Alaska was discharged because of discourteous language toward the captain and conduct unbecoming an officer of a boat, but such language and conduct did not amount to insubordination. *Held*, there must be some evidence stronger than merely being discourteous, either in actions or words; an insubordinate employé is one who refuses to obey orders, not submitting to authority, mutinous.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 45–51; Dec. Dig. § 12.*]

2. ADMIRALTY (§ 124*)—COSTS.

The fees, costs, and compensations enumerated in sections 823, 824, Rev. St. U. S. (U. S. Comp. St. 1901, p. 632), are exclusive of all others, and none other, as respects the officers and persons therein described, can be taxed or allowed.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 836–857; Dec. Dig. § 124.*]

This is a libel, in rem, against the steamer White Seal, and in personam, against the managing part owner, G. P. Sproul,

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

for wages, under a written contract, alleging an unlawful discharge before the term of the contract had expired, and damages for cost of transportation and expenses incident thereto, in returning to Seattle from Fairbanks, Alaska.

The respondent answered, setting up insubordination and incompetency on the part of the libelant, constituting cause for his discharge under a clause of the contract entered into between the libelant and the respondent Sproul, on March 16, 1909, at Seattle, Wash.

The contract agreement provided for six months' service on the part of the libelant, to be performed as chief engineer on any of the boats operated by the respondent on the Yukon river or its tributaries, for the season of 1909, at a salary of $1,500.

The libelant performed his duties as chief engineer on the steamer White Seal, beginning on March 26th, and continued under the terms of the contract until August 1, 1909, when he was paid in full to date in the sum of $1,050, and discharged.

Libelant asks for the sum of $450, balance due under section 8 of the agreement contract, by reason of his unlawful discharge; $81 for board and lodging in Fairbanks from August 1st to August 28th, on which date he began work on the steamer Martha Clow; cost of transportation from Fairbanks, by winter trail, to Seattle, by way of Valdez, amounting to $248; and salary, under the terms of the contract, at $100 per month from the time of the termination of the six months' contract, September 26th, until he should reach Seattle, which he did on November 14, 1909, in the sum of $170—a total of $949, less $204 earned on the Martha Clow, or $745.

L. K. Pratt, of Fairbanks, for libelant.
John A. Clark, for respondent.

OVERFIELD, District Judge. The evidence shows that the libelant had acted as chief engineer under a similar contract, for respondent Sproul, the previous season, had entered upon his duties under a written contract for the season of 1909, on March 26th, at which date he sailed from Seattle,

and that he continued in the capacity as chief engineer of the steamer White Seal until August 1, 1909, at which time he was paid in full to date in the sum of $1,050, and discharged.

The testimony is clear that the libelant was an efficient engineer, and discharged his duties faithfully, in his particular department in the running of the boat, but that he, at least on two occasions, used language discourteous to the respondent Sproul, half owner of the steamer, acting purser, and first mate. That the occasion for libelant employing such language was when asked about certain matters pertaining to the duties of the chief engineer. Libelant's actions at these times were likewise unbecoming to an officer of a boat carrying passengers, women as well as men; but the court is of opinion that both the language and the actions combined, on the part of the libelant, did not amount to insubordination. There must be some evidence stronger than merely being discourteous, either in actions or words. An insubordinate employé is one who refuses to obey orders, not submitting to authority, mutinous.

It is to be noted that it is a custom, and necessarily so, that a chief engineer on river steamers must be responsible for his machinery, its safety and care, and that when it is necessary for the boilers to be "blown off," by reason of the use of the muddy waters of the Yukon river and its tributaries, he must so inform the master, and the steamer is immediately tied to the river bank. So when the engine or other parts of the boat's machinery becomes defective, he must take the initiative as to when to stop for repairs, and how long. The master, as is the custom elsewhere, is in command, subject to the qualifications above mentioned.

The respondent, Sproul, and managing part owner, was in an anomalous position, acting as owner, purser, and carrying a license as first mate. While it was quite natural for him to inquire in an interested manner of the engineer where and when the boilers would require being "blown off," and if the engineer could not remedy certain "knockings" of the machinery, yet discourteous answers, even in the presence of passengers, could not, of themselves, amount to insubordination. And this

is especially so when there is no delicti shown on the part of the engineer in his duties and care of the machinery in his department. Under the surrounding circumstances, the court does not find the discharge of the libelant to have been made for cause. He would then be entitled to the balance of his salary for the unexpired term under the contract, and for cost of transportation from Fairbanks, the place of his discharge, to Seattle; that is, $450, and transportation charges of $75.

But instead of the libelant returning to Seattle, as he might well have done after his discharge, and before the close of navigation, he sought other employment, and by reason of this delay was unable to leave Fairbanks until it was possible for him to secure accommodations on the winter stage line; hence a much greater cost was incurred. That libelant delayed in Fairbanks and incurred greater expense than he would have done had he gone before navigation closed is no fault of the respondent, and cannot be here taxed, and likewise, had he departed before the close of navigation, he could easily have reached Seattle before the expiration of the term of the contract; and hence he is not entitled, under the provisions of the contract, to $100 per month, as claimed, from September 26th, the time the six months' contract expired, to the time he actually arrived in Seattle, on November 14th.

The proctor for the libelant claims as his fees the sum of $250, and evidence was admitted, under objection, that such amount was a reasonable one for the services rendered in this case. The court is obliged to pass upon the question of the proctor's fees in this action. An act of Congress of February 26, 1853, entitled "An act to regulate the fees and costs to be allowed clerks, marshals and attorneys of the Circuit and District Courts of the United States, and for other purposes" (10 Stat. 161, c. 80), fixed the fees that must control the court. The above act was amended March 3, 1855 (Act March 3, 1855, c. 175, 10 Stat. 643), extending the provisions of the act of 1853 to the territories of the United States. U. S. v. Mc-Millan, 165 U. S. 504, 17 Sup. Ct. 395, 41 L. Ed. 805.

The fees and compensations enumerated therein (see Rev. St. §§ 823, 824 [U. S. Comp. St. 1901, p. 632]), are exclusive

of all others, and none other, as respects the officers and persons therein described, can be taxed and allowed. The court will therefore sustain the objection to the allowance of the fee requested by the proctor for the libelant, and a decree will be entered in favor of libelant for the sum of $525 and taxable costs.

Let findings of fact and conclusions of law be prepared, and decree will be entered accordingly.