# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

UNITED STATES v. OLIPHANT et al. (three cases).

OLIPHANT et al. v. UNITED STATES (two cases).

(Circuit Court of Appeals, Third Circuit. February 15, 1916.)

Nos. 2029–2033.

1. CLERKS OF COURTS ⬦⟶61—ACCOUNTING AS TO FEES—"EMOLUMENTS"—"SERVICE CONNECTED WITH THE CLERK'S OFFICE."

Rev. St. § 839 (Comp. St. 1913, § 1404), provides that no clerk of a District or Circuit Court shall be allowed to retain of the fees or emoluments of his office for his personal compensation a sum exceeding $3,500 a year. Section 833 (Comp. St. 1913, § 1394) requires every such clerk semiannually to make to the Attorney General a written return of all fees and emoluments of his office, and Act June 28, 1902, c. 1301, 32 Stat. 475 (Comp. St. 1913, § 1398), similarly provides, and further provides that "emoluments" shall be understood as including all amounts received in connection with certain matters and all other amounts received for "services in any way connected with the clerk's office." Section 918 (Comp. St. 1913, § 1544) authorizes Circuit and District Courts to make rules and orders to govern their procedure, and otherwise regulate their practice. Thereunder a Circuit Court adopted a rule requiring the record in suits in equity and on demurrers and rules to show cause to be printed under the supervision of the clerk, upon payment by the parties of the estimated cost, and providing that the costs for printing should be taxed against the losing party. *Held* that, where the clerk charged litigants for printing an amount in excess of the amount paid by him for the printing, the amount so received by him was for services connected in a way with the clerk's office, and should have been reported and paid to the government, as the rule had the force of law and demanded of the clerk a service in connection with that part of the court's business peculiarly related to his office.

[Ed. Note.—For other cases, see Clerks of Courts, Dec. Dig. ⬦⟶61.

For other definitions, see Words and Phrases, First and Second Series, Emolument.]

2. CLERKS OF COURTS ⬦⟶67—DUTIES—POWER OF COURT TO IMPOSE DUTIES.

Under Rev. St. § 918 (Comp. St. 1913, § 1544), authorizing District and Circuit Courts to make rules and orders to govern their procedure and regulate their own practice, a Circuit Court had power to require the clerk of such court to supervise the printing of the record in suits in equity and on demurrers and orders to show cause.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. §§ 101–108; Dec. Dig. ⬦⟶67.]

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

230 F.—1

3. CLERKS OF COURTS ⬤⟿61—ACCOUNTING AS TO FEES—ACTIONS TO RECOVER FEES.

Where the clerk of a Circuit Court charged litigants for having the record in equity cases and on demurrers and orders to show cause printed under his supervision an amount in excess of that paid by him for the printing, retaining the difference, and these printing transactions were privately conducted and nowhere appeared in the office records and reports to the Attorney General of the fees and emoluments of the clerk's office, the failure of the government for 17 years to discover such practice and to demand reports and payments of such emoluments did not preclude a recovery thereof, on the theory that there was an account stated between the clerk and the government.

[Ed. Note.—For other cases, see Clerks of Courts, Dec. Dig. ⬤⟿61.]

4. CLERKS OF COURTS ⬤⟿61—ACCOUNTING AS TO FEES—ACTIONS TO RECOVER FEES.

Where the clerk of a Circuit Court failed to account to the government for fees collected for services in connection with certified transcripts of records transmitted to the Circuit Court of Appeals, and in the docket records of such cases entries were made showing that transcripts had been forwarded to the court, but failing to show that fees had been charged or collected therefor, and such accounts were examined and passed by the officials of the Department of Justice, the failure of the department to discover that the fees were being withheld did not amount to an approval of the clerk's retention of the fees or to an account stated, defeating a recovery of such fees by the government.

[Ed. Note.—For other cases, see Clerks of Courts, Dec. Dig. ⬤⟿61.]

5. CLERKS OF COURTS ⬤⟿61—ACCOUNTING AS TO FEES.

Rev. St. § 828 (Comp. St. 1913, § 1383), prescribing the fees of clerks of the District and Circuit Courts, prescribes a fee of 10 cents a folio for making a copy of any entry or record. Sections 833, 839, and 844 (Comp. St. 1913, §§ 1394, 1404, 1414) require such clerks to make reports of the fees and emoluments of their office, and forbid the retention by them of an amount exceeding their salary. Under a rule of a Circuit Court requiring the records in equity cases and on demurrers and rules to show cause to be printed under the clerk's supervision, the clerk made a practice of procuring and retaining extra copies of the record as so printed and using one of them for the transcript of the record returned to the Circuit Court of Appeals, and claimed the right to retain the fees received from litigants for making such transcripts, on the theory that he owned the copies of the record used and could sell them and keep the proceeds. *Held*, that it was his duty to demand and collect fees at the rate prescribed by statute, and to report and pay such fees to the government.

[Ed. Note.—For other cases, see Clerks of Courts, Dec. Dig. ⬤⟿61.]

6. CLERKS OF COURTS ⬤⟿52—FEES—STATUTORY PROVISIONS—"RETURN."

Rev. St. § 828 (Comp. St. 1913, § 1383), prescribing the fees of clerks of Circuit and District Courts, prescribes a fee of 15 cents a folio for entering any rule, etc., or making any record, certificate, return, or report, and a fee of 10 cents a folio for making a copy of any entry or record or any paper on file. Rule 14, par. 2, of the Circuit Court of Appeals for the Third Circuit (90 Fed. clv, 31 C. C. A. clv) requires the clerk of the court to which any writ of error may be directed or from which an appeal may be taken, upon payment or tender of the fees therefor, to make a return thereof by transmitting a true copy of the record, bill of exceptions, etc. *Held*, that the proper fee for a certified transcript of the record on appeal or writ of error is 10 cents a folio, since the acts for which the higher fee is prescribed are original acts, deriving their origin from no previous record, and requiring original thought and judgment to make it conform precisely to the things done or ordered, while the

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

originality, discretion, or judgment connected with the making of a certified transcript of the record is restricted to the selection of the parts of the record required by the rules to be transcribed, and responsibility in copying such parts is limited to accuracy, and, while the rule designates the transcript a "return," the return is to be made by transmitting a true copy of the record.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. §§ 78, 79; Dec. Dig. ☞52.

For other definitions, see Words and Phrases, First and Second Series, Return.]

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Three actions by the United States against Henry D. Oliphant and others. In the first two actions judgment was rendered for the government for an insufficient amount, and each party brings error. In the third action judgment was rendered for the defendants, and the United States brings error. Reversed, and new trials ordered.

J. Warren Davis, U. S. Atty., and Joseph L. Bodine, Asst. U. S. Atty., both of Trenton, N. J.

Alan Strong, of Philadelphia, Pa., for defendants.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The questions in these cases arose out of the failure of the clerk of the Circuit Court of the United States for the District of New Jersey to report and pay to the government certain moneys, which he had collected through a long term of years for work done in connection with printing records for use in the Circuit Court and transmitting records for use in the Circuit Court of Appeals. These questions raise two inquiries, first, whether the work done in connection with printing records was a service connected with the office of the clerk, the fees or emoluments for which were payable to the government; and second, whether the clerk's charges for certified transcripts were made at the rate prescribed by statute.

The conduct out of which grew these questions was this: The principal defendant was sub-clerk and deputy clerk of the Circuit Court of the United States for the District of New Jersey from 1875 to 1904, and was clerk of that court from 1904 to 1912, when the court was abolished. When he became clerk, he continued a practice, which, according to the testimony, had theretofore existed, if not with the approval, then with the acquiescence and knowledge of several judges. Under this practice he charged litigants for printed copies of records in equity cases, for use in the Circuit Court, at the rate of $1.50 a page, paid for printing the same at the rate of $1.00 a page, and kept the difference. He omitted to make office entries of such transactions, and failed to include them in his emolument accounts and in his periodical reports to the government. For certified transcripts of records transmitted to the appellate court of the circuit, the defendant clerk made charges at the rate of 10 cents a folio. He likewise omitted to include these fees in his office records and emolument accounts, (though

noting therein the issuance of the transcripts) failed to report them to the government, and retained them for his own use.

The conduct of the clerk with respect to these matters had its origin in a rule of the Circuit Court, first promulgated in 1893 and with few changes again promulgated in 1898. This rule is as follows:

### "Rule for Printing.

"1. In *all suits in equity*, the record and all proceedings in the cause shall be printed *under the supervision of the Clerk*, before final hearing.

"2. All *pleadings on demurrer*, and the *state of the case on rules to show cause* at common law, shall be printed *under the supervision of the Clerk* before the argument, if the record thereof shall exceed thirty folios.

"3. *The Clerk shall cause an estimate* to be made of the *cost* of printing record, and shall notify the party complainant (or plaintiff) of the amount of the estimate for printing the said record and proceedings on his behalf, and the defendant of the amount for printing the record and proceedings on his behalf *and upon payment* of the amount *the Clerk shall cause the record to be printed.*

"4. Upon failure of either party to pay the amount estimated for printing, within a reasonable time, such proofs of the delinquent party will not be considered at the hearing, unless otherwise ordered by the Court.

"5. The amount of the *costs for printing* the record *shall be taxed* against the party against whom costs are given."

Three actions at law were instituted by the United States on the three bonds of the clerk. The defendant, Henry D. Oliphant, is the principal in each of the bonds; the other defendants are the sureties. The actions are conveniently referred to as first, second and third, having reference to the succession of the respective periods covered by the bonds. They were tried together, and, upon review, were heard together.

In the *first suit,* the government made two demands, covering the period of the first bond:

(a) For the moneys collected above the cost of printing records for use in the Circuit Court, representing fees or emoluments charged by the clerk for services rendered in supervising printing,—referred to throughout the case as "printing"; and

(b) For fees or emoluments collected by the clerk for services rendered in connection with certified transcripts of records of the Circuit Court, transmitted on appeal or writ of error to the United States Circuit Court of Appeals for the Third Circuit,—referred to throughout the case as "transcripts."

The defendant clerk admitted the acts upon which these claims were based, but justified them by his interpretation of the rule, and, as he claimed, by the contemporaneous interpretation given it by long continued practice and judicial and departmental acquiescence and approval.

The trial court submitted to the jury the question, whether the work done in supervising printing constituted services performed by the clerk in connection with the duties of his office or constituted something else, accompanying the submission with appropriate instructions that, if found to be services, the verdict should be for the government, and if not, then for the defendants.

Upon the claim for moneys collected for transcripts, the court

directed a verdict for the government for an amount based upon a charge of 10 cents a folio, stating, as a matter of law, that to be the rate prescribed by the statute for such a service.

The jury found that the work done in connection with "printing" did not constitute services, and returned a verdict for the government only for the moneys collected for "transcripts," which, together with interest, amounted to the sum of $6,224.56. Each party sued out a writ of error.

In the *second suit*, the government made two similar demands, covering another period, resulting in like rulings by the court, a like finding by the jury, and a verdict for the government for $3,582.90. Each party prosecuted a writ of error.

In the *third suit*, the government made but one demand. This related to fees collected for printing during the third period. Upon this demand the court submitted the same question as it submitted upon like demands in the other suits. The jury made a like finding and rendered a verdict for the defendants. In this case the government alone sued out a writ of error.

The questions raised upon the writs of error, prosecuted by both parties, are susceptible of the following general classification:

*First:* Whether the defendant clerk should account for and pay to the government the difference between the cost of printing records for use in the Circuit Court and the amount charged therefor.

*Second:* Whether the court should have submitted to the jury, or decided as a matter of law, the question whether the moneys received by the clerk for printing records for use in the Circuit Court, were for services connected with his office.

*Third:* Whether testimony showing the origin and continuance of the clerks' practice of obtaining printing at one price and charging for it at another, and retaining the difference, and showing the knowledge and acquiescence of judges and the department therein, was admissible in evidence.

*Fourth:* Whether the clerk should account for and pay to the government the moneys received for the printed transcripts of records sent on appeals and writs of error to the Circuit Court of Appeals, and, if so,

*Fifth:* Whether the court erred in directing the jury to find for the government for amounts based upon the rate of 10 cents per folio instead of upon the rate of 15 cents per folio.

Against the demands of the government, the defendants claimed an allowance of certain deductions for extra printing and expenditures incident to supervising the printing. These deductions were allowed by the trial judge in his instructions to the jury. Their allowance is not specifically assigned as error, though perhaps embraced in one general assignment, but as there is no exception to this feature of the charge or to the admission of testimony upon which it was based, there is before us no question of the court's error in allowing the deductions.

[1] For defense to the first demand, the defendants maintain, that the excess charges exacted by the defendant clerk for supervising

printing in obedience to the rule, might have been "private profit," "commission," "bonus," "salvage," "rake-off" or "graft," for which he might be liable to some one, but in no event was the work a service "connected with the clerk's office," for the emoluments of which is he liable to the government. This contention is based upon the ground that the office of clerk was statutory, that the statutes did not connect services of this character with the office, and that unless so connected by positive statutory enactment, the emoluments received therefor do not belong to the government. This requires a brief review of the statutes.

The office, of course, was statutory. The act establishing the circuit courts included and created the office of clerk of such courts. 1 Stat. pp. 74–75 (1789). The duties of a clerk of a circuit court were in a measure indicated but not wholly defined by legislation respecting the fees of clerks, exhaustive historical reviews of which may be found in United States v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627, United States v. Hill, 123 U. S. 681, 8 Sup. Ct. 308, 31 L. Ed. 275, and United States v. Mason, 218 U. S. 517, 31 Sup. Ct. 28, 54 L. Ed. 1113, only a portion of which need be repeated for the purpose of this discussion.

Under the acts of 1791 and 1792, 1 Stat. 217, 277, clerks were allowed to retain all fees and were not required to render an account of them to the government. The act of 1841, 5 Stat. 427, established the compensation of clerks at $4,500 a year above clerk hire and office expenses, and required them to pay the overplus into the public treasury. The act of 1842, 5 Stat. 483, directed clerks to make semiannual returns to the Secretary of the Treasury of all fees and emoluments of their office of "every name and character," and authorized them to retain from fees and emoluments, above office expenses and clerk hire, $3,500 a year as compensation, and required them to pay the residue into the treasury. Until the act of Feb. 26, 1853, 10 Stat. 161, the fees of clerks remained in substance as fixed by the acts of 1791 and 1792. The act of 1853 established the present fee bill, being sections 823 to 857 of the Revised Statutes (Comp. St. 1913, §§ 1375, 1463). Since the act of June 22, 1870, c. 150, creating the Department of Justice, the returns of clerks have been made to the Attorney General, and supervision of their accounts has been exercised by that officer.

At the time of the decision of the case of United States v. Hill, presently to be considered, two sections of the Revised Statutes read:

"Sec. 839. No clerk * * * shall be allowed * * * to retain of the fees and emoluments of his office * * * for his personal compensation, over and above his necessary office expenses, including necessary clerk hire, * * * a sum exceeding $3,500 a year. * * *" Comp. St. 1913, § 1404.

"Sec. 833. Every * * * clerk * * * shall, on the first days of January and July, in each year, * * * make to the Attorney General * * * a written return for the half year ending on said days, respectively, of all fees and emoluments of his office of every name and character, and of all the necessary expenses of his office, including necessary clerk hire, together with the vouchers for the payment of the same for such last half year." Comp. St. 1913, § 1394.

In this state of the law, the case of the United States v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627, was heard by the Supreme Court. In that case, the government had sued Hill, clerk of the District Court of the United States for the District of Massachusetts, for naturalization fees, which he had collected and had failed to report and pay to the government. Under a standing order of the court, the clerk was required to examine naturalization papers before presentation, in order to avoid delays incident to their improper preparation. For this service, the clerk charged a fee. The question was whether such a fee was an emolument of the clerk's office. The Supreme Court held, that the provision in section 823 of the Revised Statutes, taken from section 1 of the act of 1853, 10 Stat. 161, directing that fees of clerks shall be "taxed and allowed," applied prima facie to taxable fees and costs in ordinary suits and litigation between party and party, prosecuted in the court, and not to ex parte matters with respect to which no fees were specified by the fee bill; that the fee bill prescribed no fees in naturalization matters; that the services rendered in connection therewith were personal and not official, and the fees collected therefor were not required to be taxed and were not recoverable by the government. Of this character of service, it is contended, was the supervision of printing by the defendant clerk in the cases under consideration.

The ruling in United States v. Hill, supra, followed by United States v. McMillan, 165 U. S. 504, 17 Sup. Ct. 395, 41 L. Ed. 805, was based upon a distinction between services which may be performed by any one, and those which may be performed only by the clerk. The court held that the preliminary examination of naturalization papers for the convenience of the court and the dispatch of its business, was a service susceptible of being performed by any designated person, while services in connection with ordinary suits between party and party, prosecuted in the court, belong peculiarly to the clerk and could not be performed by another. The contention of the defendants is based upon the same distinction. In this connection, it may be well to note, that in drawing the distinction between services of the two classes, the Supreme Court recognized that litigation moving through the clerk's office is business peculiarly connected with that office, and that emoluments for services rendered in connection therewith must be taxed, returned and paid to the government.

After this decision, there arose a question whether fees paid by attorneys upon admission to practice were received for services in connection with the clerk's office. The Comptroller of the Treasury, having in mind the cases of United States v Hill. supra, and United States v. McMillan, supra, decided pari ratione that clerks were not bound to account for such fees.

With an evident intent to nullify these decisions, Congress, by Act of June 28, 1902, c. 1301, 32 Stat. 475 (Comp. Stat. 1913, § 1398), amended section 833 of the Revised Statute, which required of each clerk half yearly returns of all fees and emoluments of his office of "every name and character," by adding thereto the following:

"And the word 'emoluments' shall be understood as including all amounts received in connection with the admission of attorneys to practice in the courts, and all amounts received for services in naturalization proceedings, whether rendered as clerk, as commissioner, or in any other capacity, *and all other amounts received for services in any way connected with the clerk's office.*"

The obvious intent of Congress in. employing the comprehensive language of this amendment was to limit the clerk's salary to $3,500 per year, and to compel a full and complete report of all emoluments received by him, so that the accounting officers of the government might permit him to retain the salary prescribed by law and prevent him retaining any more. Alexander v. United States, 43 Ct. Cl. 389. This was the state and the purpose of the law at the time of the appointment of the defendant clerk.

[2] The defendants maintain that the language of the amendment with respect to "services in any way connected with the clerk's office" did not connect anything with the office, certainly nothing new, but contemplated only what was or what might lawfully become connected with it, and left the principle of the law as it was before the amendment. The defendants also maintain that services connected with the clerk's office were only those prescribed by law, and as the office was statutory, its services and emoluments must have been prescribed by statute. They further maintain that the court, being without legislative function, was without power to impose a duty upon and demand a service of its clerk not prescribed by statute, and that when the court demanded of the clerk a service not expressly prescribed by statute, it simply exercised an ancient authority to call upon him, as it could call upon an attorney or any one else, to assist it in disposing of its business, for which fees might be allowed that were personal and therefore not payable to the government. United States v. Hill, supra. We are not inclined to yield to this contention nor to hold that all acts of the clerk for which he was responsible to the government must have been prescribed by statute, and that all acts of the clerk otherwise prescribed were not so connected with his office as to require him to report and pay his emoluments to the government. The contention as presented, squarely raises the question whether the court, by rule or order, may demand of its clerk a service in connection with the business of the court that is not specifically prescribed by statute, and whether the government is entitled to the emoluments for such a service, if rendered.

The rule of the Circuit Court providing for the printing of records in equity suits, pleadings on demurrer, and the state of the case on rules to show cause, and imposing upon its clerk the duty to supervise the same, was evidently made under authority of section 918 of the Revised Statutes (Comp. St. 1913, § 1544), which conferred upon the several circuit courts power to make rules and orders to govern their procedure and "otherwise regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings." There is no question of the administrative power conferred by this statute, and there can be no serious question of the validity of the rule made thereunder. A rule

made under authority of law has the force of law. This rule pre-scribes three things, first, that the record in all suits in equity and the pleadings in certain other proceedings shall be printed; second, that the clerk shall supervise the printing; and third, that he shall estimate and tax the costs of printing. No one questions the power of the court to order the printing of records as a convenient or necessary incident to the prompt administration of justice, nor do we doubt that the statute which conferred upon the court power to make such an order, conferred upon it power to compel its execution. Power con-ferred upon a court to make rules and orders for the prompt admin-istration of justice, carries by necessary implication the power to en-force them through the instrumentalities which are supplied the court in the person of its clerks or other officers. It would be a vain thing for a court to make an order if it did not have the power to enforce it, and when a court by its rule or order directs one of its officers to do a thing in connection with a matter which is purely a part of his official duties, the order of the court becomes the law which governs the officer.

What were some of the official duties of the clerk of the Circuit Court? The strictly official duties of a clerk of a court, which no one else performs, are those which pertain to litigation as it moves through his office toward the court. With respect to this class of work he is required to issue process, file pleadings, enter decrees and otherwise pursue the practice prescribed by the court with relation to suits in equity, pleadings on demurrer, and rules to show cause. That such services are connected with a clerk's office is beyond ques-tion. They constitute his principal and most important duties. In promulgating a rule that records in all equity suits should be print-ed, the court, in this instance, did nothing more than add an incident to litigation in equity suits, and in requiring the clerk to supervise the printing and tax the costs, it demanded of him a service in con-nection with that part of the court's business which was peculiarly related to his office. U. S. v. Hill, supra. Such a service demanded by lawful rule was a service prescribed by law. Fees and emoluments received therefor were in that "way" connected with the clerk's office, and whether prescribed by statute or fixed by the clerk or by the court, should have been reported and paid to the government.

[3] For further defense to the demand of the government for "printing" emoluments, the defendants rely upon an "account stated" between the clerk and the government. This defense is based upon the failure of the government, through seventeen years, to discover the clerks' practice and to demand reports and payments of the emolu-ments as they were received. This theory rather suggests the absence of an account stated than the presence of one. As the printing trans-actions of the clerks were privately conducted and appeared nowhere in their office records and reports, which were the things examined by the department, we are of opinion that the failure of the government to discover what the defendant clerk was concealing does not pre-clude recovery in these actions.

[4] To the demand of the government for "transcript" emoluments,

like defense is urged, supported in this instance, however, by evidence that in the docket records of cases that went to the appellate court, entries were made showing that transcripts had been forwarded to that court, but failing to show that fees had been charged or collected therefor. Such accounts had been examined and passed by the department officials, and although the notation of such an act without an accompanying notation of a fee collected therefor might reasonably have put the department on inquiry, nevertheless the failure of the department to discover that the fees were being withheld does not put the department in the legal position arising from an account stated, or in the position of approving the retention of emoluments which did not appear in the accounts.

The last contention of the defendants with respect to printing, is, that the thing for which the payments were made was not the clerk's service but was the "cost of printing." This contention is based upon the theory that the printing was a business transaction, involving a purchase and sale of printing by the clerk, in which, if a profit resulted to him, it "was only an increment or something arising out of it," that is, the clerk bought printing at wholesale and sold it at retail, and the difference was profit which belonged to him. This theory is supported by neither reason nor testimony. It is not disputed, even by evidence of the defendant clerk himself, that the amount charged over and above the cost of printing was for work performed by the clerk in supervising the printing pursuant to the rule. Such work constituted service of some kind and for some one. Because of the nature of the matters to which it related and because it was done for the court upon its order, we believe that it was a service connected with the office of the clerk, and that the trial judge should have so instructed the jury as a matter of law.

The two remaining questions are: Did the trial court err in directing a verdict for the government for moneys received by the clerk for transcripts of records of cases removed on appeal or by writ of error from the Circuit Court to the Circuit Court of Appeals; and if it did not, then did the court err in directing a verdict in favor of the government for an amount based upon the rate of 10 cents per folio instead of upon the rate of 15 cents per folio?

[5] The conduct of the defendant clerk, out of which arose these questions, is this: When the record of a case was printed for use in the Circuit Court, the clerk procured and retained extra copies. In the event of appeal or writ of error, he used one of them for the transcript of the record, which, with his certificate, he returned to this court in obedience to its rules. He conceived that as the printed copies had been paid for, though not with his money, they belonged to him, and being thus his property, he might sell them for any amount he chose and keep the proceeds. The fees or prices charged and received were calculated at the rate of 10 cents a folio, being the precise rate fixed by the statute (section 828, Revised Statutes [Comp. St. 1913, § 1383]) "for making a copy of any entry or record" of his office. He kept the fees. The trial court directed a verdict in favor of the government for the moneys so collected and retained.

Both parties charge error in this ruling. The defendants specify that the court erred in directing a verdict for the government for any amount, upon the claim that the printed copies of records, which constituted a portion of the certified transcripts, were the clerk's own property, and that in returning the same in response to an appeal or a writ of error, he was not rendering a service or collecting fees for which the government could claim report and payment; but maintain, however, that if this court should find otherwise, then, as against the contention of the government, the trial court did not err in directing the jury to base the amount of its verdict upon the rate of 10 cents per folio.

The government, on the other hand, charges error to the trial court in instructing the jury to base its calculation for the amount of the verdict upon the rate of 10 cents per folio instead of upon the rate of 15 cents per folio.

We are not inclined to seriously discuss the contention that the printed copies of records were the clerk's own property, for which he might charge what he chose and keep what he charged.

The rule under which the clerk acted in making up and returning certified transcripts of records, being rule 14, paragraph 2 of the Circuit Court of Appeals for the Third Circuit (90 Fed. clv, 31 C. C. A. clv), is as follows:

"The clerk of the court to which any writ of error may be directed, or from which any appeal may be taken, upon being paid or tendered his fees therefor, shall make a return of the same by transmitting a true copy of the record, bill of exceptions, assignment of errors, and all proceedings in the case, under his hand and the seal of the court."

This is a valid rule, made under authority of law. It imposed upon the clerk an official duty, the performance of which was an official service. He was required to render the service, however, only "upon being paid or tendered his fees therefor." What were his fees for this service? Section 828 of the Revised Statutes prescribes the fees for this and other services of the clerk as follows:

"For entering any return, rule, order, continuance, judgment, decree or recognizance, or drawing any bond, or making any record, certificate, return, or report, for each folio fifteen cents."

"For *a copy of* any entry or *record* or of any paper on file, for each folio, *ten cents.*"

It is therefore certain that in rendering the service of making and returning a certified transcript of a record for use in an appellate court, the clerk rendered a service prescribed by the rule, and for that service was required by law to demand and collect fees at the rate prescribed by statute (section 828, Rev. Stat.), and to report the same and pay to the government so much thereof as exceeded his salary. 32 Stat. 475, Comp. Stat. 1913, § 1398; sections 833, 839 and 844, Rev. Stat., Comp. Stat. 1913, § 1404.

Without a present regard to whether the defendant clerk based his fees upon the proper rate, it is certain that he did not report and pay them to the government. For obvious reasons, therefore, the contention of the defendant that the court erred in directing a verdict for the government for any amount must fail.

[6] We are of the opinion. that the contention of the government that the court erred in instructing the jury to base the amount of the verdict upon the rate of 10 cents per folio instead of upon the rate of 15 cents per folio, must also fail. We might dispose of this contention on the pleadings, but as it is squarely raised by specifications of error, we prefer to consider and decide it on its merits.

Whether the statutory fee for a certified transcript of a record is based upon the rate of 10 cents per folio or upon the rate of 15 cents per folio, had been a controverted question in the circuit courts of the United States since 1882, the decisions of which have not been in accord. We are not informed that the question has been considered by appellate courts.

In construing section 828 of the Revised Statutes, the Circuit Court of the United States for the Eastern District of Missouri, in Cavender v. Cavender, 10 Fed. 828, held that a transcript of a record on appeal or writ of error is only a copy of the record of the court from which the appeal is taken or to which the writ of error is directed, and being a copy, is to be charged for at the rate prescribed by the statute for. a copy of a record, which is 10 cents per folio.

The Circuit Court of the United States for the Western District of North Carolina, in McIlwaine v. Ellington, 99 Fed. 133, held that a certified transcript is an original document which should be charged for at the rate of 15 cents per folio. This decision was based upon the word "return" as it appears in the rule of the Circuit Court of Appeals for the Fourth Circuit, 90 Fed. clv, 31 C. C. A. clv, and in the statute fixing fees. This rule (rule 14) is identical with the rule of this court, which requires the clerk to make a "return" of the writ of error or appeal by transmitting a true copy of the record, bill of exceptions, etc. The court considered that the copy thus transmitted, being denominated a "return," should be charged for at the rate prescribed by the statute for "any return," which is 15 cents a folio, holding that the "return" mentioned in the rule was the "return" meant by the statute.

In Mohrstadt v. Mutual Life Ins. Co., 107 Fed. 872, and 145 Fed. 751, the Circuit Court of the United States for the Eastern District of Missouri changed its position, and following McIlwaine v. Ellington, supra, held that the "return" by the clerk to an order that "the record and proceedings with all things concerning the same" be transmitted, is something more than a copy of what exists in the clerk's office, that as the compiling of such a "return" "requires the exercise of discretion and judgment," it is altogether a new thing "and becomes the original record" of the appellate court, for which the statute allows fees at the rate of 15 cents per folio.

In Thornton v. Insurance Cos. (C. C.) 125 Fed. 250, the Circuit Court of the United States for the Middle District of Pennsylvania, citing McIlwaine v. Ellington, ruled that the rate prescribed by the statute for a certified transcript is 15 cents per folio.

In view of these decisions, a construction of the statute is necessary, not merely for the decision of this case but for the guidance of clerks of the courts of this circuit.

It appears to us that a determination of this issue rests solely upon the question whether a certified transcript is an original record or a copy or transcription of an original record. The statute clearly prescribes a fee for the one and another fee for the other.

By the first paragraph quoted, the statute provides that "for entering any return, rule, order, continuance, judgment, decree or recognizance, or drawing any bond or making any order, certificate, return or report," a charge shall be made at the rate of 15 cents a folio.

The acts here contemplated are original in their nature. They are such and only such as occur and are required to be performed in the progress of the cause. They constitute the recorded entries of the court's doings and of the court's orders and judgments, both interlocutory and final. They are original acts in the sense of being the first of their character or in their order, and in the sense of deriving their origin from no previous record. They are original in the sense employed in several of the cases cited, in that they require original thought and judgment to make them conform precisely to the things done or ordered. They have to do with the building of a record, which must accurately and fully disclose the acts and rulings of the court upon the matter in controversy. They are, therefore, of a higher dignity and impose a greater responsibility in their performance than acts contemplated by the second paragraph quoted from the statute.

The second paragraph provides that "for *making a copy of any* (entry or) *record*, or any paper on file," the fee therefor shall be at the rate of 10 cents per folio.

This paragraph contemplates services of a lesser grade for which smaller fees are to be charged, based upon a lower rate prescribed. It contemplates copying something which is already written, and compiling the copies of something which already exists. Originality, discretion or judgment connected with such a service, if it be the making of a certified transcript of a record for use in an appellate court, is restricted to the selection of the parts of the record required by the rules to be transcribed, and responsibility in copying the same is limited to accuracy. That the clerk may be called upon to make such a copy is evidenced not only by the statute which prescribes a fee therefor, but by the rule of court which imposes the duty. True, the rule of the Circuit Court of Appeals for this Circuit, like a similar rule of the Circuit Court of Appeals for the Fourth Circuit, provides that in response to an appeal or writ of error, the clerk "shall make a *return* of the same." But the rule also defines the word "return" by showing how it shall be made, namely "*by* transmitting *a true copy* of (the) record." The record and a true copy of the record are different things. From the very nature of the difference, both cannot be originals. One must be the original and the other a copy or transcript of the original, as denoted by the name by which it is commonly known. The latter is the thing which by the rule of this court the clerk is required to "return" "upon being paid or tendered his fees therefor." It is obvious that the difference between originals and copies is recognized by the statute, and that by the statute different fees are prescribed for different services. We are of opinion that the fee prescribed by the

statute for compiling and returning a certified copy of a record for use on appeal or writ of error in this court, should be calculated at the rate of 10 cents per folio for the part copied or transcribed, and, of course, at the rate of 15 cents per folio for the certificate.

The trial court committed no error in directing a verdict for the government for moneys received for such services, based upon the rate of 10 cents per folio.

The judgments below are reversed and new trials ordered.